1  ANN MILLER RAVEL, County Counsel (S.B. #62139)
   MIGUEL MARQUEZ, Assistant County Counsel (S.B. #184621)
2  TAMARA LANGE, Lead Deputy County Counsel (S.B. #177949)
   OFFICE OF THE COUNTY COUNSEL
3  70 West Hedding Street, East Wing, Ninth Floor
   San Jose, California  95110-1770
4  Telephone:  (408) 299-5900
   Facsimile:  (408) 292-7240

5

6  Attorneys for Defendant
   COUNTY OF SANTA CLARA and SANTA
7  CLARA COUNTY PUBLIC HEALTH
   DEPARTMENT

8

9              SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA

10

11 CALIFORNIA RESTAURANT            C08-03685
   ASSOCIATION,                     )  08-CV-
12                                  )  NOTICE TO ADVERSE PARTY OF
           Plaintiff,               )  REMOVAL TO FEDERAL COURT
13                                  )
   v.                               )  Judge: Honorable Joseph Huber
14                                  )  Date of First Filing: July 22, 2008
   THE COUNTY OF SANTA CLARA        )  Department:  8C
15 and THE SANTA CLARA COUNTY       )  Trial Date: None
   PUBLIC HEALTH DEPARTMENT,        )
16                                  )
           Defendants.              )
17 _____  )

18         TO PLAINTIFF CALIFORNIA RESTAURANT ASSOCIATION AND ITS

19 ATTORNEY OF RECORD:

20         PLEASE TAKE NOTICE THAT a Notice of Removal of this action was filed in the

21 United States District Court for the Northern District of California on August 1, 2008.

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

ANN MILLER RAVEL
County Counsel
County of Santa Clara
San Jose, California

Notice to Adverse Party
of Removal to Federal Court                    1                    1-08-CV-117885

1    A copy of the said NOTICE OF REMOVAL is attached to this Notice, and is served and

2  filed herewith.

3  Dated: August 1, 2008                              Respectfully submitted,

4                                                     ANN MILLER RAVEL
                                                      County Counsel
5

6                                               By:   _____
                                                      TAMARA LANGE
7                                                     Lead Deputy County Counsel

8                                                     Attorneys for Defendant
                                                      COUNTY OF SANTA CLARA and
9                                                     SANTA CLARA COUNTY PUBLIC
                                                      HEALTH DEPARTMENT
10

11    137503.wpd

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ANN MILLER RAVEL
County Counsel
County of Santa Clara
San Jose, California

Notice to Adverse Party
of Removal to Federal Court                          2                          1-08-CV-117885

ANN MILLER RAVEL, County Counsel (S.B. #62139)
MIGUEL MARQUEZ, Assistant County Counsel (S.B. #184621)
TAMARA LANGE, Lead Deputy County Counsel (S.B. #177949)
OFFICE OF THE COUNTY COUNSEL
70 West Hedding Street, East Wing, Ninth Floor
San Jose, California 95110-1770
Telephone: (408) 299-5900
Facsimile: (408) 292-7240

Attorneys for Defendant
COUNTY OF SANTA CLARA and SANTA
CLARA COUNTY PUBLIC HEALTH
DEPARTMENT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| CALIFORNIA RESTAURANT ASSOCIATION, | USDC Case No. _____ |
| Plaintiff, | Superior Court Case No. 1-08-CV-117885 |
| v. | **NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. 1441(b)** |
| THE COUNTY OF SANTA CLARA and THE SANTA CLARA COUNTY PUBLIC HEALTH DEPARTMENT, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that defendants County of Santa Clara and Santa Clara County Public Health Department hereby remove to this Court the state court action described below.

1.   On July 22, 2008, an action was commenced in the Superior Court of the State of California in and for the County of Santa Clara, entitled *California Restaurant Association v. The County of Santa Clara, et al.,* as case number 1-08-CV117885. Copies of the Summons and Complaint are attached hereto as Exhibit "A."

2.   Defendants accepted service of the Summons and Complaint on July 24, 2008. A copy of the signed Notice and Acknowledgment of Service is attached hereto as Exhibit "B."

ANN MILLER RAVEL
County Counsel
County of Santa Clara
San Jose, California

3.     This is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1331 and which may be removed to this Court by defendants pursuant to the provisions of 28 U.S.C. § 1441(b) in that the allegations arise under the Nutrition Labeling and Education Act of 1990, 21 U.S.C. §§ 341 *et seq.* and the First Amendment to the United States Constitution.

4.     On July 24, 2008, Plaintiff filed a Notice of Motion and Motion for Declaratory Relief and a Preliminary Injunction; Memorandum of Points and Authorities in Support Thereof, a copy of which is attached hereto as Exhibit "C."

5.     The Superior Court for the State of California has issued the following orders on the specified dates:

     i.    07/24/08; Order Granting Plaintiff California Restaurant Association's Ex Parte Application To Exceed Fifteen Page Limit on Memorandum of Points and Authorities Supporting Plaintiff's Motion for Declaratory Relief and a Preliminary Injunction.

    ii.   07/31/08; Order Granting Application for Admission of Peter L. Zimroth as Counsel *pro hac vice.*

   iii.   07/31/08; Order Granting Application for Admission of Kent A. Yalowitz as Counsel *pro hac vice.*

copies of which are attached hereto as Exhibit "D."

6.     The declarations and exhibits filed in support of Plaintiff's Motion for Declaratory Relief and a Preliminary Injunction are voluminous.  Defendants request that the Court issue a writ of certiorari pursuant to 28 U.S.C. § 1447(b) directing the Superior Court of the State of California to produce all records in the case.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1    7.    All other defendants who are named and/or have been served with Summons and

2  Complaint are departments of the County of Santa Clara.  All defendants seek to remove this

3  action to this Court.

4  Dated: August 1, 2008                              Respectfully submitted,

5                                                     ANN MILLER RAVEL
                                                       County Counsel
6

7                                           By: _____

8                                                     TAMARA LANGE
                                                       Lead Deputy County Counsel
9                                                     Attorneys for Defendant
                                                       COUNTY OF SANTA CLARA and
10                                                    SANTA CLARA COUNTY PUBLIC
                                                       HEALTH DEPARTMENT
11

12  137487.wpd

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# SUMMONS
## (CITACION JUDICIAL)

SUM-100

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

M. Rosales

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

The County of Santa Clara

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

California Restaurant Association

---

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.*

---

The name and address of the court is:
*(El nombre y dirección de la corte es):*

CASE NUMBER:
*(Número del Caso):* 8 C V 1 1 7 8 8 5

Superior Court of California, County of Santa Clara
Downtown Superior Court,
191 North First Street, San Jose, CA, 95113

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Trenton H. Norris, Arnold & Porter LLP,
90 New Montgomery Street, Suite 600, San Francisco, CA 94105. (415) 356-3000

DAVID H. YAMASAKI
Chief Executive Officer, Clerk

DATE:
*(Fecha)* JUL 22 2008

Clerk, by M. Rosales
*(Secretario)*
, Deputy
*(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [✓] on behalf of *(specify):* The County of Santa Clara

    under: [ ] CCP 416.10 (corporation)        [ ] CCP 416.60 (minor)
           [ ] CCP 416.20 (defunct corporation) [ ] CCP 416.70 (conservatee)
           [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
           [✓] other *(specify):* CCP 416.50 (Public Entity)
4. [ ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc. | www.USCourtForms.com

# SUMMONS
## (CITACION JUDICIAL)

**SUM-100**

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

The Santa Clara County Public Health Department

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

California Restaurant Association

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* | CASE NUMBER:<br>*(Número del Caso):* 1 8 C V 1 1 7 8 8 5 |

Superior Court of California, County of Santa Clara
Downtown Superior Court,
191 North First Street, San Jose, CA, 95113

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Trenton H. Norris, Arnold & Porter LLP,
90 New Montgomery Street, Suite 600, San Francisco, CA 94105. (415) 356-3000

| DATE:<br>*(Fecha)* JUL 2 2 2008 | Clerk, by _____ A. Rocal___ , Deputy<br>*(Secretario)*          *(Adjunto)* |
|---|---|

DAVID H. YAMASAKI
Chief Executive Officer/Clerk

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):* The Santa Clara County Public Health Department

    under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
            ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
            ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
            ☑ other *(specify):* CCP 416.50 (Public Entity)
4. ☐ by personal delivery on *(date):*

| | |
|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 (Rev. January 1, 2004) | **SUMMONS** | Page 1 of 1<br>Code of Civil Procedure §§ 412.20, 465<br>American LegalNet, Inc. \| www.USCourtForms.com |

Trenton H. Norris (California State Bar No. 164781)
Sarah Esmaili (California State Bar No. 206053)
ARNOLD & PORTER LLP
90 New Montgomery Street, Suite 600
San Francisco, CA 94105
Telephone: (415) 356-3000
Facsimile: (415) 356-3099
Email: trent.norris@aporter.com
Email: sarah.esmaili@aporter.com

Peter L. Zimroth (*pro hac vice* admission pending)
Kent A. Yalowitz (*pro hac vice* admission pending)
Nancy G. Milburn (*pro hac vice* admission pending)
ARNOLD & PORTER LLP
399 Park Avenue
New York, NY 10022
Telephone: (212) 715-1000
Facsimile: (212) 715-1399
Email: peter.zimroth@aporter.com
Email: kent.yalowitz@aporter.com
Email: nancy.milburn@aporter.com

Attorneys for Plaintiff
CALIFORNIA RESTAURANT ASSOCIATION

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SANTA CLARA**

| | |
|---|---|
| CALIFORNIA RESTAURANT ASSOCIATION, | Case No. _____ |
| Plaintiff, | **COMPLAINT** |
| v. | |
| THE COUNTY OF SANTA CLARA and THE SANTA CLARA COUNTY PUBLIC HEALTH DEPARTMENT, | |
| Defendants. | |

1 08CV117885

1

## PRELIMINARY STATEMENT

2      1.      The California Restaurant Association ("CRA") seeks declaratory and injunctive

3   relief to prevent enforcement by the County of Santa Clara (the "County") and the Santa Clara

4   County Public Health Department (the "Department") of a newly promulgated ordinance,

5   Ordinance No. NS-300.793 (the "Ordinance"), which amends Division A18 of the Santa Clara

6   County Ordinance Code.  The Ordinance dictates how selected restaurants within the

7   unincorporated area of the County must communicate nutrition information to their customers.  The

8   Ordinance applies only to restaurants in the unincorporated area of the County that have at least 14

9   establishments doing business in California.  For these restaurants, the Ordinance requires that

10  select parts of nutrition information (calories on menu boards and food tags or calories together with

11  saturated fat, trans fat, carbohydrates and sodium on menus) be displayed in a precisely prescribed

12  manner on menus, menu boards, and food tags.  But the Nutrition Labeling and Education Act of

13  1990, 21 U.S.C. §§ 301, 343, 343-1 ("NLEA"), and regulations promulgated thereunder by the

14  federal Food and Drug Administration ("FDA"), expressly preempt laws like the Ordinance, in

15  which a state or subdivision of a state "directly or indirectly" establishes any requirements

16  respecting health or nutrient claims that are "not identical to" the requirements of federal law.  The

17  Ordinance is also preempted by California state law because the California Retail Food Code, Cal.

18  Health & Safety Code § 113703 *et seq.* ("CRFC"), fully occupies the field of "health and sanitation

19  standards for retail food facilities . . . ."  Cal. Health & Safety Code § 113705.  Thus, the

20  requirements of the Ordinance fall within this fully occupied field of state regulation.  The

21  Ordinance also infringes on the speech rights, guaranteed by both the First Amendment of the

22  United States Constitution and article I, section 2 of the California Constitution, of those restaurants

23  that come within its purview, impermissibly compelling government-directed speech.

24      2.      Through congressional legislation and FDA regulatory action, the federal

25  government has made a determination that the effective communication by restaurants of nutrition

26  information to consumers is a complex subject requiring flexibility; that there is no one "right way"

27

28

COMPLAINT

1  to communicate this information; that restaurants should be permitted and encouraged to try

2  different ways of doing so; and that they should not be burdened by specific requirements that

3  would hinder experimentation.

4      3.    Defendants' regime takes a directly contrary approach. For selected restaurants,

5  Defendants wish to require that information about calories, saturated fat, trans fat, carbohydrates

6  and sodium be communicated in a particular and inflexible manner to customers. A restaurant

7  subject to the Ordinance must post the nutrition information of each menu item at a particular spot

8  in the restaurant. For items on menu boards or food tags, covered restaurants must disclose calorie

9  information in a size and typeface as prominent as the menu item's name or price. Santa Clara

10 County Ord. Code § A18-353(c)(i). On menus, these restaurants must disclose calories, saturated

11 fat, trans fat, carbohydrates and sodium in a size and typeface as prominent as the menu item's

12 name or price. *Id.* § A18-353(b)(i). Failure to make these disclosures subjects restaurants to

13 governmental sanction. *Id.* § A18-354. Federal and state law impose no such requirements. The

14 Ordinance is thus "not identical to" the regulations promulgated under the NLEA and, in fact,

15 contravenes the federal regulatory scheme. Thus, the Ordinance is expressly preempted and

16 unenforceable under the Supremacy Clause of the United States Constitution. Furthermore, the

17 Ordinance is preempted by the CRFC, which fully occupies the field of "health and sanitation

18 standards for retail food facilities . . . ." Cal. Health & Safety Code § 113705.

19      4.    Defendants' inflexible regime also impermissibly burdens CRA members' rights of

20 speech under the United States and California Constitutions. The Ordinance requires restaurants to

21 publish Defendants' health message; it forces the restaurants to do so as if the message were the

22 restaurants' own message; and it forces the restaurants to communicate in a way that is incomplete

23 and misleading.

24      5.    To protect CRA members' rights of speech, and to prevent the Defendants from

25 imposing a regime preempted by the NLEA and regulations promulgated thereunder, Plaintiff CRA

26 seeks a declaration that the Ordinance is invalid, and an injunction barring Defendants from

27 enforcing it.

28

1

## JURISDICTION AND VENUE

2      6.      The Court has subject matter jurisdiction pursuant to article VI, section 10 of the

3  California Constitution and California Code of Civil Procedure sections 410.10 and 1060.  The

4  Court has personal jurisdiction over Defendants pursuant to California Code of Civil Procedure

5  section 410.50.

6      7.      Venue is proper in this County pursuant to California Code of Civil Procedure

7  sections 394 and 395 because Defendants are situated within this County and the actions and events

8  giving rise to CRA's claims have arisen in this County.

9

## PARTIES

10      8.      Plaintiff, the California Restaurant Association, is a non-profit trade association

11  representing the California restaurant and food service industry.  The Association has over 22,000

12  members, some of which operate restaurants within the unincorporated area of Santa Clara County.

13  Certain of these CRA members maintain at least 14 establishments in California, and therefore will

14  be subject to the Ordinance if it is not enjoined.

15      9.      Defendant County of Santa Clara is a public entity constituted under the Constitution

16  and the laws of the State of California.  The County makes and enforces all ordinances and

17  regulations with respect to municipal affairs.  Santa Clara County Ord. Code § 100; Cal. Const. art.

18  XI, § 7.  The County is responsible for enacting the Ordinance.

19      10.      Defendant Santa Clara County Public Health Department is responsible for enforcing

20  orders and standards pertaining to public health adopted by the Santa Clara County Board of

21  Supervisors.  Santa Clara County Ord. Code § A18-10.  The Department is also responsible for

22  receiving requests for hearings concerning citations under the Ordinance (§ A18-358) as well as for

23  receiving penalties collected under the Ordinance (§ A18-365).

24

## STANDING AND RIPENESS

25      11.      CRA has standing to bring this action as the representative of its members because

26  some of its members are suffering immediate or threatened injury as a result of the Ordinance

27  challenged by this action of the sort that would make out a justiciable case had CRA members

28  themselves brought suit.

1    12.    This case is ripe for adjudication as CRA members are sustaining immediate and

2    threatened injury from operation of the challenged Ordinance, and such injury will be redressed by

3    the relief requested.

4    13.    The issues raised by CRA herein are fit for judicial review as the case turns on the

5    claims of preemption by federal and state law and claims of infringement on the right of free speech

6    in violation of the United States and California Constitutions.  Such issues are fit for judicial

7    resolution.  In addition, as the present pleading presents a facial challenge to the Ordinance, it was

8    ripe for judicial review the moment the Ordinance was enacted.

9    14.    Affected CRA members will suffer significant hardship if adjudication of CRA's

10    claims is delayed.  The threat of imminent enforcement of the Ordinance has a present concrete

11    effect on affected CRA members' day-to-day affairs and irremediably adverse consequences would

12    flow from a delay in challenging the Ordinance.  Affected restaurants must either comply with the

13    Ordinance or face the governmental sanctions that occur pursuant to the express terms of the

14    Ordinance.

## **BACKGROUND**

15    15.    Under the NLEA, restaurants are generally exempted from the mandatory labeling

16    requirements that apply to packaged foods.  Restaurants making health and nutrient content claims,

17    however, are required under the NLEA to comply with FDA regulations governing the provision of

18    such information.  21 U.S.C. § 343(r)(2)(A).

19    16.    Based on studies conducted by the FDA and others, the FDA concluded that it was

20    premature to draw firm conclusions about the effectiveness, if any, of any particular method of

21    communicating nutrient information in restaurants, and that restaurants should be given leeway and

22    encouragement to experiment with providing health and nutrient content claims in different formats.

23    Thus, FDA regulations expressly grant restaurants broad discretion in choosing a format for the

24    presentation of whatever nutrition information they provide.  21 C.F.R. § 101.10.  Specifically,

25    section 101.10 of the FDA's regulations allows restaurants to present nutrition information "in

26    various forms, including those provided in § 101.45 [allowing a wide range of formats, including

27    

28    

- 4 -

1    signs, charts, brochures, posters, leaflets, videos and other media] *and other reasonable means.*"

2    (emphasis supplied.)

3        17.    This flexibility is essential to the FDA's regulatory scheme, which seeks to secure

4    the availability of accurate and complete information about the nutritional content of restaurant food

5    without making the requirements for disclosure unnecessarily onerous.

6        18.    In accordance with the discretion granted under the NLEA and accompanying

7    regulations, some CRA members have elected to provide nutritional information to their customers

8    using a variety of formats, including in-store brochures, websites, in-store posters, toll free

9    numbers, tray liners and food packaging.

10        19.    Such restaurants have sought to give customers access to complete nutrient

11    information in a user-friendly format that emphasizes the importance of a well-balanced diet and a

12    healthy lifestyle. Consistent with the prevailing view among public health experts that obesity is

13    the result of several factors acting together over time, and that proper consumer education is

14    essential, these restaurants have avoided overemphasizing the importance of any one nutrient—such

15    as calories, fat or carbohydrates—to an overall, well-balanced diet, and have focused instead on

16    providing consumers with a balanced presentation of all relevant nutrition information, including

17    fat, sodium, calories, carbohydrates, cholesterol, protein, vitamins and minerals.

18        20.    On June 24, 2008, the County enacted the Ordinance, which requires all restaurants

19    in the unincorporated area of the County with at least 14 establishments in California to post certain

20    nutrition information for each menu item on menus, menu boards and food tags. The Ordinance is

21    scheduled to take effect on September 1, 2008.

22        21.    The Ordinance dictates the manner, size and typeface that the restaurant must use to

23    present certain nutrient content claims of an item. On menu boards and food tags, the Ordinance

24    mandates that covered restaurants post the "[t]otal number of calories . . . next to each item . . . in a

25    size and typeface that is at least as prominent as that used for either the name or price of the Menu

26    Item." Santa Clara County Ord. Code § A18-353(c)(i). On their menus, covered restaurants must

27    post the total number of calories, total number of grams of saturated fat, total number of grams of

28    trans fat, total number of grams of carbohydrates and total number of milligrams of sodium "next to

1    or beneath each item on the Menu in a size and typeface that is at least as prominent as that used for

2    either the name or price of the Menu Item." *Id.* § A18-353(b)(i). The Ordinance further requires

3    that these restaurants state the following on their menus or in additional printed material (for

4    restaurants using menu boards or food tags): "Recommended limits for a 2,000 calorie daily diet are

5    20 grams of saturated fat and 2,300 milligrams of sodium." *Id.* § A18-353(b)(ii), (c)(ii).

6        22.    The Ordinance thus isolates certain nutrition content from the body of nutrition

7    information set forth in the FDA-created "Nutrition Facts" panel format found on packaged foods.

8    In contrast to the Ordinance, the "Nutrition Facts" panel provides the full range of information the

9    FDA has determined consumers require to make informed dietary choices, including calories from

10   fat, saturated fat, trans fat, cholesterol, dietary fiber, sugars, protein, and vitamin and mineral

11   content of a given menu item. The Ordinance severely limits restaurants' freedom in

12   communicating nutrition information to their customers. By forcing restaurants to make nutrient

13   content claims only on select information, the Ordinance compels restaurants to convey a nutrition

14   message that the restaurants believe is incomplete and misleading, and with which they do not

15   agree: namely, that information on these select nutrients is the only relevant nutrition criterion to

16   consider when making food selections.

17       23.    Limiting the nutrient information—on menu boards to calories and on menus to

18   calories, saturated fat, trans fat, carbohydrates and sodium—as a guideline to the healthfulness of a

19   particular food is misleading. Some higher calorie foods, for example, have more nutritional value

20   than some lower calorie foods.

21       24.    By imposing a rigid regime governing how restaurants must communicate nutritional

22   information to customers, the Ordinance contravenes the approach taken by Congress, the FDA, and

23   prevailing public health opinion.

24       25.    The Ordinance also imposes significant economic injury on the restaurants it

25   governs. CRA members will incur added costs in complying with the Ordinance. Addition of

26   nutrition information will increase the amount of text on the menus and menu boards. In order to fit

27   the new information, the font size of the item name and price in all likelihood would have to be

28   reduced, making menus and menu boards more cluttered and harder to read.

COMPLAINT

# FIRST CAUSE OF ACTION

## (State Preemption)

### (Cal. Code Civ. Proc. 1060)

26.     Plaintiff realleges each and every allegation contained above.

27.     Article XI, section 7 of the California Constitution provides that "[a] county or city may make and enforce within its limits all local, police, sanitary and other ordinances and regulations not in conflict with general laws."  When there is a conflict between a local law and state law, the state law preempts the local law.

28.     The California Retail Food Code, Cal. Health & Safety Code § 113703 *et seq.* ("CRFC"), regulates the retail sale of food, including food served at restaurants, on a statewide basis.  The CRFC provides that, "[e]xcept as provided in Section 113709 [not relevant here], it is the intent of the Legislature to occupy the whole field of health and sanitation standards for retail food facilities, and the standards set forth in this part and regulations adopted pursuant to this part shall be exclusive of all local health and sanitation standards relating to retail food facilities."  Cal. Health & Safety Code § 113705.

29.     Under the CRFC, pre-packaged foods must meet labeling requirements, including nutrition labeling requirements specified under the NLEA.  Cal. Health & Safety Code § 114089(a), (b)(5).  In addition, the CRFC contains labeling requirements for bulk foods.  The CRFC does not specifically require nutrition labeling of foods prepared and served at restaurants.  By contrast, the Ordinance requires that certain nutrition information be posted in particular spots at the restaurant (the menu, food tags or menu boards) and dictates that it be presented in a certain size and appearance.

30.     The requirements of the Ordinance fall within the CRFC's fully occupied field of "health and sanitation standards for retail food facilities . . . ."  Thus, the Ordinance conflicts with the CRFC.

31.     As a nutrient labeling requirement that conflicts with the CRFC, the Ordinance is preempted under the California Constitution.

## SECOND CAUSE OF ACTION

(Federal Preemption)

(Cal. Code Civ. Proc. 1060)

32.    Plaintiff realleges each and every allegation contained above.

33.    The Supremacy Clause (Article VI) of the United States Constitution states that the "Laws of the United States which shall be made in Pursuance [of the Constitution] . . . shall be the supreme Law of the Land . . . ."  When there is a conflict between a state law and federal law, the federal law preempts the state law.

34.    The NLEA provides that any food labeling requirement imposed by a state or political subdivision of a state that is "not identical to" the requirement contained in the statute is preempted.  21 U.S.C. § 343-1(a)(5).  Specifically, the NLEA states:  "no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce any requirement respecting any claim of the type described in section 343(r)(1) of this title [*i.e.*, nutrition claims] made in the label or labeling of food that is not identical to the requirement of section 343(r) of this title, except a requirement respecting a claim made in the label or labeling of food which is exempt under [a section of the statute dealing with claims concerning cholesterol, saturated fat, dietary fiber and nutrients that increase the risk of disease, not relevant here]."  *Id.*

35.    The labeling requirements contained in the Ordinance are "not identical to" the requirements in the NLEA.  The Ordinance isolates certain nutrition information from all other nutrient content claims, requires that it be posted in particular spots at the restaurant (the menu, food tags or menu board), and dictates that it be presented in a certain size and appearance.  The NLEA does not contain any of these requirements.  Therefore, the Ordinance is "not identical to" the requirements in the NLEA and is preempted.

36.    As a nutrient labeling requirement inconsistent with both the language and purpose of the NLEA and its regulations, the Ordinance is preempted under the Supremacy Clause of the United States Constitution.

## THIRD CAUSE OF ACTION

(Cal. Code Civ. Proc. 1060)

(Article I, section 2 of the California Constitution)

37.    Plaintiff realleges each and every allegation contained above.

38.    Article I, section 2 of the California Constitution provides: "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." The California Constitution guarantees the right to speak, the right not to speak, and the right to choose the content of one's message. The commercial nature of speech does not deprive it of these guarantees.

39.    By requiring restaurants to make certain nutrient content claims on their menus and menu boards, the Ordinance compels restaurants to convey Defendants' health message; to express the message as if it were the restaurants' own; and to deliver a message with which many restaurants disagree: namely, that information about calories and a few other nutrients is the only relevant nutrition criterion to consider when making food selections.

40.    Defendants are unable to demonstrate that the Ordinance will advance their asserted interest in reducing the incidence of obesity in Santa Clara County. Absent this demonstration, the County's substantial infringement of member restaurants' state constitutional rights is impermissible.

41.    In addition, the Ordinance is not narrowly enough drawn.

42.    Accordingly, the Ordinance violates member restaurants' rights to freedom of speech guaranteed by article I, section 2 of the California Constitution.

43.    Plaintiff has no remedy at law for such deprivation of its members' rights.

## FOURTH CAUSE OF ACTION

(First Amendment)

(Cal. Code Civ. Proc. 1060)

44.    Plaintiff realleges each and every allegation contained above.

45.    The First Amendment of the United States Constitution provides: "Congress shall make no law . . . abridging the freedom of speech . . . ." In protecting the autonomy of every

- 9 -

1  speaker to choose the content of his message, the First Amendment—applied to the states by

2  incorporation into the Fourteenth Amendment—guarantees the right to speak, the right not to speak,

3  and the right to choose the content of one's message. The commercial nature of speech does not

4  deprive it of these guarantees.

5      46.    By requiring restaurants to make certain nutrient content claims on their menus and

6  menu boards, the Ordinance compels restaurants to convey Defendants' health message; to express

7  the message as if it were the restaurants' own; and to deliver a message with which many

8  restaurants disagree:  namely, that information about calories and a few other nutrients is the only

9  relevant nutrition criterion to consider when making food selections.

10     47.    Defendants are unable to demonstrate that the Ordinance will advance their asserted

11  interest in reducing the incidence of obesity in Santa Clara County. Absent this demonstration, the

12  County's substantial infringement of member restaurants' constitutional rights is impermissible.

13     48.    In addition, the Ordinance is not narrowly enough drawn.

14     49.    Accordingly, the Ordinance violates member restaurants' rights to freedom of speech

15  guaranteed by the First Amendment to the United States Constitution, as incorporated by the

16  Fourteenth Amendment.

17     50.    Plaintiff has no remedy at law for such deprivation of its members' rights.

18                          **PRAYER FOR RELIEF**

19     WHEREFORE, Plaintiff CRA demands judgment against Defendants on each and every

20  cause of action:

21     1.    Declaring that the Ordinance is preempted by the California Retail Food Code and,

22  therefore, of no force;

23     2.    Declaring that the Ordinance is preempted by the Nutrition Labeling and Education

24  Act of 1990, and, therefore, of no force;

25     3.    Declaring that the Ordinance denies Plaintiff's member restaurants the right to

26  freedom of speech guaranteed by article I, section 2 of the California Constitution;

27

28

1        4.      Declaring that the Ordinance denies Plaintiff's member restaurants the right to

2    freedom of speech and thereby violates the First Amendment to the United States Constitution, as

3    incorporated by the Fourteenth Amendment;

4        5.      Preliminarily and permanently enjoining the Defendants from enforcing the

5    Ordinance;

6        6.      Awarding Plaintiff damages to be proved at trial pursuant to 42 U.S.C. § 1983, and

7    its costs and expenses, including reasonable attorneys' fees as permitted by 42 U.S.C. § 1988,

8    necessarily incurred in connection with this action; and

9        7.      Granting such other and further relief as this Court may deem just and proper.

10

11   Dated: July 22, 2008                   ARNOLD & PORTER LLP

12

13                      By: _Trenton H. Norris / SES_

                               Trenton H. Norris

14                            Attorneys for Plaintiff

                      CALIFORNIA RESTAURANT

15                               ASSOCIATION

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Trenton H. Norris (California Bar No. 164781)<br>Arnold & Porter LLP<br>90 New Montgomery Street, Suite 600, San Francisco, CA 94105<br>TELEPHONE NO. (415) 356-3000    FAX NO. (Optional): (415) 356-3099<br>E-MAIL ADDRESS (Optional): trent.norris@aporter.com<br>ATTORNEY FOR (Name): California Restaurant Association (Plaintiff) | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Santa Clara
STREET ADDRESS:  191 North First Street, San Jose, CA 95113
MAILING ADDRESS:  191 North First Street, San Jose, CA 95113
CITY AND ZIP CODE:  San Jose, CA 95113
BRANCH NAME:  Downtown Superior Court

PLAINTIFF/PETITIONER:  California Restaurant Association

DEFENDANT/RESPONDENT:  The County of Santa Clara, et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>1-08-CV-117885 |
|---|---|

TO (insert name of party being served): The County of Santa Clara and the Santa Clara County Public Health Department

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: July 23, 2008

Sarah Esmaili
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of (to be completed by sender before mailing):
1. [✓]  A copy of the summons and of the complaint.
2. [✓]  Other (specify):  Civil Cover Sheet, Civil Lawsuit Notice, Alternative Dispute Resolution Information Sheet, ADR Stipulation and Order Form, Judges ADR Program Stipulation and Order Form, Guidelines - Complex Civil Litigation Department, Electronic Filing and Service Standing Order

(To be completed by recipient):

Date this form is signed:  July 24, 2008

Tamara Lange, Deputy County Counsel
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)
Attorney for County of Santa Clara

▶ _____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

www.CalCourtForms.com

1    Trenton H. Norris (California State Bar No. 164781)
     Sarah Esmaili (California State Bar No. 206053)
2    ARNOLD & PORTER LLP
     90 New Montgomery Street, Suite 600
3    San Francisco, CA 94105
     Telephone: (415) 356-3000
4    Facsimile: (415) 356-3099
     Email: trent.norris@aporter.com
5    Email: sarah.esmaili@aporter.com

6    Peter L. Zimroth (*pro hac vice* admission pending)
     Kent A. Yalowitz (*pro hac vice* admission pending)
7    Nancy G. Milburn (*pro hac vice* admission pending)
     ARNOLD & PORTER LLP
8    399 Park Avenue
     New York, NY 10022
9    Telephone: (212) 715-1000
     Facsimile: (212) 715-1399
10   Email: peter.zimroth@aporter.com
     Email: kent.yalowitz@aporter.com
11   Email: nancy.milburn@aporter.com

12   Attorneys for Plaintiff
     CALIFORNIA RESTAURANT ASSOCIATION

13

14          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

15                   **COUNTY OF SANTA CLARA**

16

| | |
|---|---|
| 17   CALIFORNIA RESTAURANT ASSOCIATION, | ) Case No. 1-08-CV-117885 |
| 18 | ) |
| 19         Plaintiff, | ) **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR DECLARATORY RELIEF AND A PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 20       v. | ) |
| 21   THE COUNTY OF SANTA CLARA and THE SANTA CLARA COUNTY PUBLIC HEALTH DEPARTMENT, | ) |
| 22 | ) |
| 23          Defendants. | ) Date: August 15, 2008 <br> Time: 9:00 a.m. <br> Dept: 8 <br> Judge: The Honorable Joseph H. Huber |
| 24 | ) |
| 25 | ) Action filed: July 22, 2008 |
| 26 | ) |

27

28

1

## NOTICE OF MOTION AND MOTION

2        PLEASE TAKE NOTICE that, at 9:00 a.m. on August 15, 2008, or as soon thereafter as this

3 matter may be heard, in the Courtroom of the Honorable Joseph H. Huber, located in Department 8

4 of Santa Clara County Superior Court, at 191 North First Street, San Jose, CA 95113, Plaintiff

5 California Restaurant Association ("Plaintiff" or "CRA") will move, and hereby moves, for an order

6 granting Plaintiff a declaratory judgment and preliminary injunction in Plaintiff's action pursuant to

7 42 U.S.C. § 1983 and California Code of Civil Procedure § 1060 enjoining the Santa Clara County

8 Public Health Department from enforcing Santa Clara County's Ordinance No. NS-300.793 on

9 grounds of federal preemption, state preemption and violation of the right to freedom of speech

10 guaranteed by the First Amendment of the United States Constitution and article I, section 2 of the

11 California Constitution.

12        This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and

13 Authorities submitted in support of the Motion, the Appendix of Exhibits in support of the Motion,

14 the Declaration of Michael Andres, the Declaration of Debra DeMuth and the exhibits thereto, the

15 Declaration of William Holmberg and the exhibit thereto, the Declaration of Stephanie Quirantes

16 and the exhibits thereto, the Declaration of Scott Randolph, the Appendix of Non-California

17 Authorities in support of the Motion, the papers and pleadings on file in this action and upon such

18 further briefs, evidence and oral argument as may be presented to the Court in connection with this

19 Motion.

20 Dated: July 24, 2008                   ARNOLD & PORTER LLP

21

22

23                        By: _Trenton H. Norris / SE_

24                          Trenton H. Norris
                          Attorneys for Plaintiff

25                         CALIFORNIA RESTAURANT
                            ASSOCIATION

26

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR DECLARATORY RELIEF AND A PRELIMINARY
INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

## TABLE OF CONTENTS

**Page**

STATEMENT OF FACTS ............................................................................................................1

    A.  Nutritional Information in Restaurants ...........................................................1

    B.  Santa Clara County Ordinance No. NS-300.793 ...........................................1

    C.  No Evidentiary Support for the Ordinance ....................................................2

SUMMARY OF ARGUMENT ..................................................................................................4

LEGAL STANDARD .................................................................................................................5

ARGUMENT ...............................................................................................................................6

I.    Federal Law Preempts the Ordinance ............................................................................6

    A.  Overview of the Nutrition Labeling and Education Act of 1990 .....................6

    B.  Under the NLEA, Statements Describing the Amount of Calories Are "Claims" .............7

    C.  Under FDA Regulations, Statements Describing the Amount of Calories Are "Claims" ...........................................................................................7

    D.  Restaurants Have Flexibility in Disclosing Nutritional Information ..................8

    E.  The NLEA Preemption Provision Applies to the Ordinance ............................9

    F.  Theories Advanced in *NYSRA* Are Inconsistent with the NLEA and the FDA's Regulatory Definition of "Claim" ..............................................9

        1.  NLEA and FDA Regulations Do Not Distinguish Between Qualitative and Quantitative Statements ..................................................10

        2.  Definition of "Claim" Does Not Distinguish Between Voluntary and Mandatory Statements ..................................................................12

        3.  21 U.S.C. § 343(r)(1) Does Not "Carve Out" Certain Claims from the Reach of That Provision ..........................................................13

    G.  Plaintiff's Interpretation Harmonizes Requirements of the NLEA ..................18

II.    The California Retail Food Code Preempts the Ordinance ..........................................19

III.   The Ordinance Violates the First Amendment Rights of Plaintiff's Members ...........20

    A.  The Ordinance Will Cause Irreparable Harm by Impermissibly Compelling Speech ..........................................................................................20

    B.  Plaintiff Is Likely to Succeed on the Merits ....................................................22

        1.  The Ordinance Fails Under *Central Hudson* .....................................23

- i -

a.  The Ordinance Does Not Advance the County's Asserted Interest in Preventing Obesity in a "Direct and Material Way"................................23

b.  The Ordinance's Infringement on Speech Is More Extensive Than Necessary to Serve the County's Asserted Interest ...............................24

2.  The Ordinance Fails Under *United Foods* ...............................................25

3.  Rational Basis Review Is the Wrong Standard .......................................26

IV.  The Ordinance Violates the Free Speech Rights of Plaintiff's Members Guaranteed by the California Constitution.......................................................................................28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Alaska Trojan Partnership v. Gutierrez,*
    425 F.3d 620 (9th Cir. 2005)...................................................... 8, 14

*Arkansas Elec. Coop. Corp. v. Arkansas Pub. Serv. Comm'n.,*
    461 U.S. 375 (1983)................................................................ 20

*ARP Pharmacy Servs., Inc. v. Gallagher Bassett Servs., Inc.,*
    138 Cal. App. 4th 1307 (2d Dist. (Div. 4) 2006) ............................. 29

*Central Hudson Gas & Electric Corp. v. Public Serv. Commission of New York,*
    447 U.S. 557 (1980)............................................................ passim

*Christensen v. Harris County,*
    529 U.S. 576 (2000)................................................................ 14

*Cincinnati v. Discovery Network, Inc.,*
    507 U.S. 410 (1993)................................................................ 24

*Crown Pac. v. Occupational Safety & Health Review Comm'n,*
    197 F.3d 1036 (9th Cir. 1999) ................................................... 14

*Downey v. Crabtree,*
    100 F.3d 662 (9th Cir. 1996)..................................................... 14

*Edenfield v. Fane,*
    507 U.S. 761 (1993)............................................................ 23, 27

*Elrod v. Burns,*
    427 U.S. 347 (1976)................................................................ 21

*English v. General Electric Co.,*
    496 U.S. 72 (1990) .................................................................. 6

*Fidelity Federal Savings & Loan Ass'n v. de la Cuesta,*
    458 U.S. 141 (1982)................................................................. 6

*Gerawan Farming, Inc. v. Kawamura,*
    33 Cal. 4th 1 (2004) ............................................................ 5, 28

*Gerawan Farming, Inc. v. Lyons,*
    24 Cal. 4th 468 (2000) ............................................................ 28

*Greater New Orleans Broad. Ass'n v. United States,*
    527 U.S. 173 (1999)................................................................ 24

*Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston,*
    515 U.S. 557 (1995)................................................................ 21

*International Dairy Foods Ass'n v. Amestoy,*
    92 F.3d 67 (2d Cir. 1996)...................................................... 21, 22

**Page(s)**

*IT Corp. v. County of Imperial,*
    35 Cal. 3d 63 (1983) ............................................................................................... 5

*Johanns v. Livestock Mktg. Ass'n,*
    544 U.S. 550 (2005) ............................................................................................. 29

*Jones v. Rath Packing Co.,*
    430 U.S. 519 (1977) ............................................................................................... 6

*Kasky v. Nike, Inc.,*
    27 Cal. 4th 939 (2002) ........................................................................................ 28

*Lorillard Tobacco Co. v. Reilly,*
    533 U.S. 525 (2001) ............................................................................................. 24

*McDermott v. Wisconsin,*
    228 U.S. 115 (1913) ............................................................................................... 6

*Morales v. Trans World Airlines, Inc.,*
    504 U.S. 374 (1992) ............................................................................................... 6

*National Electric Manufacturers Ass'n v. Sorrell,*
    272 F.3d 104 (2d Cir. 2001) ............................................................................... 26

*New York State Restaurant Ass'n v. New York City Board of Health,*
    509 F. Supp. 2d 351 (S.D.N.Y. 2007) ...................................................... 7, 8, 10, 12

*New York State Restaurant Ass'n v. New York City Board of Health,*
    No. 08 Civ. 1000, 2008 WL 1752455 (S.D.N.Y. Apr. 16, 2008) ............................. 10, 12

*Pacific Gas & Electric Co. v. Public Utilities Comm'n of California,*
    475 U.S. 1 (1986) ............................................................................................ 21, 25

*Public Citizen, Inc. v. Shalala,*
    932 F. Supp. 13 (D.D.C. 1996) ........................................................................... 17

*Riley v. National Federation of the Blind of N.C., Inc.,*
    487 U.S. 781 (1988) ............................................................................................. 21

*Rubin v. Coors Brewing Co.,*
    514 U.S. 476 (1995) ........................................................................................ 24, 25

*Sammartano v. First Judicial District Court, in & for County of Carson City,*
    303 F.3d 959 (9th Cir. 2002) ............................................................................... 20

*Sherwin-Williams Co. v. City of Los Angeles,*
    4 Cal. 4th 893 (1993) .......................................................................................... 20

*United States v. Haggar Apparel Co.,*
    526 U.S. 380 (1999) ............................................................................................... 8

*United States v. Mead Corp.,*
    533 U.S. 218 (2001) ............................................................................................... 8

*United States v. United Foods, Inc.,*
    533 U.S. 405 (2001) ...................................................................................... passim

- iv -

|  | Page(s) |
|---|---|
| *White v. Davis*,<br>30 Cal. 4th 528 (2003) | 5 |
| *Wooley v. Maynard*,<br>430 U.S. 705 (1977) | 21 |
| *Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*,<br>471 U.S. 626 (1985) | 21, 26, 27 |

**Statutes, Rules and Other Administrative Materials:**

| | |
|---|---|
| Nutrition Labeling & Education Act, Pub. L. No. 101-535, 106 Stat. 4501 (1990) | passim |
| 21 U.S.C. § 321(k) | 17 |
| 21 U.S.C. § 321(m) | 17 |
| 21 U.S.C. § 343 | 6 |
| 21 U.S.C. § 343(q) | 6, 7, 15 |
| 21 U.S.C. § 343(r) | passim |
| 21 U.S.C. § 343-1(a) | passim |
| 21 C.F.R. § 101.9 | passim |
| 21 C.F.R. § 101.10 | passim |
| 21 C.F.R. § 101.13 | passim |
| 21 C.F.R. § 101.45 | 8, 16 |
| 38 Fed. Reg. 2125 (Jan. 19, 1973) | 6 |
| 41 Fed. Reg. 51001 (Nov. 19, 1976) | 6 |
| 58 Fed. Reg. 2302 (Jan. 6, 1993) | 11, 12 |
| 61 Fed. Reg. 40320 (Aug. 2, 1996) | 17 |
| Cal. Const. art. I, § 2 | 5, 28 |
| Cal. Const. art. XI, § 7 | 19 |
| Cal. Health & Safety Code § 113703 | 4, 19 |
| Cal. Health & Safety Code § 113705 | 4, 19 |
| Cal. Health & Safety Code § 114089 | 4, 19 |
| San Francisco Health Code §§ 468-468.8 | 10 |
| Santa Clara County Ord. Code §§ A18-351–366 | passim |

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR DECLARATORY RELIEF AND A PRELIMINARY
INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### STATEMENT OF FACTS

3

**A.     Nutritional Information in Restaurants**

4

Most restaurants in the unincorporated area of the County of Santa Clara publish no

5

nutrition information at all about their food.  Santa Clara County (the "County") does not wish to

6

alter that fact.  Instead, it has targeted a small number of restaurants that are affiliated with large

7

chains—many of which have, for years, published comprehensive nutrition information about their

8

food in brochures available at the restaurants, on posters, on packaging, on tray liners and on

9

websites.[1]  The County wants to alter the way in which these few targeted restaurants convey

10

nutrition information and has passed a new law, Santa Clara County Ordinance No. NS-300.793

11

(the "Ordinance"), requiring them to display statements showing calories on their menu boards and,

12

in some cases, calories, saturated fat, trans fat, carbohydrates and sodium on their menus.

13

These restaurants strongly disagree with the County's approach.  They question the efficacy

14

of the Ordinance in reducing obesity—the County's stated goal in passing the new law.  They

15

believe that there are better ways to communicate with their customers about health and nutrition,

16

and that the new law may be counterproductive, with an overemphasis on a limited number of

17

nutrients that can interfere with a healthy, balanced diet. *See, e.g.,* DeMuth Decl. ¶ 12; Quirantes

18

Decl. ¶¶ 15-18.  The restaurants' views are earnestly held and well grounded.

19

**B.     Santa Clara County Ordinance No. NS-300.793**

20

The Ordinance amends Division A18 of the Santa Clara County Ordinance Code to require

21

chain restaurants within the unincorporated area of the County with 14 or more establishments in

22

the State of California to make statements showing select nutritional information on their menu

23

boards, menus and food tags in the precise manner prescribed by the law.  On their menu boards

24

25

[1] *See, e.g.,* Declaration of Michael Andres in Support of Plaintiff's Motion for Declaratory Relief and a Preliminary Injunction, dated July 17, 2008 ("Andres Decl.") ¶ 4; Declaration of Debra

26

DeMuth in Support of Plaintiff's Motion for Declaratory Relief and a Preliminary Injunction, dated July 16, 2008 ("DeMuth Decl.") ¶¶ 5-9; Declaration of William Holmberg in Support of Plaintiff's

27

Motion for Declaratory Relief and a Preliminary Injunction, dated July 17, 2008 ("Holmberg Decl.") ¶ 3; Declaration of Stephanie Quirantes in Support of Plaintiff's Motion for Declaratory

28

Relief and a Preliminary Injunction, dated July 15, 2008 ("Quirantes Decl.") ¶¶ 7-13.

1    and food tags, these restaurants must make statements showing calorie content next to each menu

2    item, in a size and typeface at least as prominent as that used for the name or price of the menu

3    item. Santa Clara County Ord. Code § A18-353(c)(i). On their menus, these restaurants must make

4    statements showing calorie content, saturated fat, trans fat, carbohydrates and sodium next to or

5    beneath each menu item, also in a size and typeface at least as prominent as that used for the name

6    or price of the menu item. *Id.* § A18-353(b)(i). Menus must further include a clear and

7    conspicuous statement of the recommend daily limits for both saturated fat and sodium in a 2,000

8    calorie daily diet. *Id.* § A18-353(b)(ii).[2] Failure to make these disclosures subjects restaurants to

9    governmental sanction. *Id.* § A18-354.

10           The Ordinance has established an inflexible regime. The new law rigidly requires

11   prominent display of calories on both menu boards and food tags and calories, saturated fat, trans

12   fact, carbohydrates and sodium on menus. It applies equally to customized and combination

13   offerings. In such cases, the new law requires the restaurants' statements to show a "range,"

14   minimum to maximum, of the possible calories for each size offered for sale. *Id.* § A18-353(d).

15   These "range" postings have been criticized as not useful to customers. Holmberg Decl. ¶ 4;

16   Declaration of Scott Randolph in Support of Plaintiff's Motion for Declaratory Relief and a

17   Preliminary Injunction, dated July 16, 2008 ("Randolph Decl.") ¶ 11.

18           **C.      No Evidentiary Support for the Ordinance**

19           No one knows how to reverse the trend of increasing obesity in the United States. Even on

20   subjects as seemingly simple as the communication of nutrition information and how (or whether)

21   consumers use the information, there are questions but no answers. After more than a decade of

22   comprehensive nutrition labeling on packaged foods mandated by federal law, the incidence of

23   obesity continues to rise. With respect to the much more complicated issue of foods sold by the

24   variety of restaurants in the United States, one recent government-sponsored report concluded that

25

26   ───────────────────

27   [2] The Ordinance further requires the restaurants that use menu boards or food tags to make
     statements about calories, saturated fat, trans fat, carbohydrates and sodium in printed menus,
     pamphlets, brochures, posters or similar documents that are plainly visible to consumers at the point
28   of ordering. Santa Clara County Ord. Code § A18-353(c)(ii).

1   there is no public health consensus on how consumers use nutrition information in restaurants or

2   whether such information could help reduce the incidence of obesity:

> There is a clear need for more research regarding how the provision
> of nutrition information, claims (such as "low calorie"), and symbols
> influence consumer preference and choice for away-from-home food
> consumption situations.  Of particular concern is how, when, and why
> consumers use nutrition information and claims during their decision-
> making processes.  More specifically, a better understanding is
> needed of the types of factors that moderate consumers' responses to
> the provision of nutrition information and claims for away-from-home
> foods.

9   *The Keystone Forum on Away-From-Home Foods: Opportunities for Preventing Weight Gain and*

10  *Obesity, Final Report*, The Keystone Center, Washington, D.C. (May 2006), at 13 ("Keystone

11  Report"), attached hereto as Appendix Exhibit I.  The Report suggests many unanswered questions:

12  How and where should information be provided?  Under what circumstances is current behavior

13  influenced and under what circumstances is future behavior influenced?  For example, if consumers

14  consume an extra 100 calories at lunch, will they eat a lighter dinner?  Or, if they consume 100

15  fewer calories at lunch, will they replace these calories at other meals or between meals?  Will they

16  exercise more, or less?  *See* Keystone Report 84.

17        Dr. David Allison, one of the country's leading authorities on obesity, echoed this

18  conclusion in analyzing the efficacy of a regulation adopted by the New York City Board of Health,

19  which is similar to Santa Clara County's Ordinance.  Dr. Allison concluded, based on an extensive

20  review of the scientific literature, that no evidence supported the hope that posting calories on menu

21  boards would lead to reduced obesity:

> [T]here is no body of data showing that implementation of R81.50
> [New York City's regulation] would affect actual behavior or weight
> either in the short-term or long-term nor is there any body of evidence
> that the specific manner in which the R81.50 would require provision
> of caloric information would lead to better results in the short-term or
> long-term than any other method.  **Thus, I conclude that there is not
> competent and reliable evidence that providing restaurant
> patrons with calorie information on menu items will reduce
> individual or population levels of obesity.  Nor is there evidence
> that the method of providing caloric information mandated by
> R81.50 will reduce levels of obesity more than the methods**

- 3 -

1     **currently used by the affected restaurants to provide this**
2     **information.**

3   Exhibit E pp. 29-30 ("Allison Decl.") to DeMuth Decl. (emphasis in original).  Dr. Allison went on

4   to state that only "conjecture" could be drawn from the existing research. *Id.* at 33.

5                   **SUMMARY OF ARGUMENT**

6     *First*, the Ordinance is preempted by federal law.  By its terms, the Nutrition Labeling and

7   Education Act of 1990 ("NLEA") subjects restaurants to regulations promulgated by the Food and

8   Drug Administration ("FDA") concerning "nutrition claims." 21 U.S.C. § 343(r)(2); *see* 21 C.F.R.

9   101.13(b)(1).  Further, that federal statute expressly preempts state laws like the Ordinance, in

10   which a state or local entity "directly or indirectly" establishes any requirement respecting nutrition

11   claims that is "not identical" to the regulatory requirements of federal law. 21 U.S.C. § 343-1(a)(5).

12   Because the Ordinance imposes food labeling requirements different from (*i.e.* not "identical to")

13   the federal regulations, it is expressly preempted by the NLEA and void under the Supremacy

14   Clause.

15     *Second*, the Ordinance is also preempted by California state law.  The California Retail Food

16   Code, Cal. Health & Safety Code § 113703 *et seq.* ("CRFC"), fully occupies the field of "health and

17   sanitation standards for retail food facilities . . . ." Cal. Health & Safety Code § 113705.  The

18   "whole field" occupied by the CRFC includes the labeling of food in restaurants, including nutrition

19   information. *See* Cal. Health & Safety Code § 114089(a), (b)(5).  The requirements of the

20   Ordinance thus fall within this fully occupied field of state regulation.

21     *Third*, the Ordinance violates the First Amendment rights of Plaintiff's members by

22   compelling them to speak and to convey a viewpoint with which they do not agree.  The Supreme

23   Court has consistently reviewed burdens on lawful and non-misleading commercial speech by

24   requiring the government to prove that its regulation will directly advance a substantial public

25   interest in a manner that is narrowly drawn to achieve the government's objective. *Central Hudson*

26   *Gas & Elec. Corp. v. Public Serv. Comm'n of New York*, 447 U.S. 557, 564 (1980).  More recently,

27   the Supreme Court has questioned whether this level of intermediate scrutiny is adequate to protect

28   commercial speech and has applied even stricter scrutiny to laws that compel commercial speech.

1    *United States v. United Foods, Inc.*, 533 U.S. 405, 409-11 (2001). The Ordinance cannot survive

2    under either standard of review.

3        Under *Central Hudson*, the County cannot carry its burden of demonstrating that the

4    Ordinance will be effective in advancing the County's stated purpose of reducing obesity rates.

5    Additionally, under *Central Hudson*, the County cannot explain why reasonable and less

6    burdensome alternatives would be ineffective. The Ordinance also cannot pass muster under the

7    holding of *United Foods*. There, the Supreme Court held that, even in the context of commercial

8    speech, the government may not force a private party to convey the *government's* message as if it

9    were the private party's message when the private party wants to convey a different message or no

10    message at all.

11        *Fourth*, the Ordinance violates Plaintiff's free speech rights guaranteed by Article I, section

12    2 of the California Constitution. Article I's free speech clause, which is "broader and greater" than

13    the First Amendment, affords *at least* intermediate scrutiny (*i.e.*, *Central Hudson*) to cases

14    implicating free speech rights of commercial speakers. *Gerawan Farming, Inc. v. Kawamura*, 33

15    Cal. 4th 1, 15, 22 (2004) (internal quotations omitted). Thus, under this standard, the Ordinance

16    violates the Plaintiff's members' free speech rights guaranteed by the California Constitution.

17    **LEGAL STANDARD**

18        Generally, a court determining whether to issue a preliminary injunction looks at two

19    interrelated factors. *See White v. Davis*, 30 Cal. 4th 528, 554 (2003) (citing *IT Corp. v. County of*

20    *Imperial*, 35 Cal. 3d 63, 69-70 (1983)). First, the court considers the likelihood that the plaintiff

21    will prevail on the merits at trial. *Id.* Second, the court balances the interim harm that the plaintiff

22    is likely to sustain if an injunction is denied with the harm that the defendant may suffer if an

23    injunction is issued. *Id.* "The ultimate goal of any test to be used in deciding whether a preliminary

24    injunction should issue is to minimize the harm which an erroneous interim decision may cause."

25    *IT Corp.*, 35 Cal. 3d at 73.

26

27

28

1    **ARGUMENT**

2    I.    **FEDERAL LAW PREEMPTS THE ORDINANCE**

3    The Supremacy Clause permits Congress to preempt any state law that conflicts with the

4    exercise of federal power. "Pre-emption fundamentally is a question of congressional intent and

5    when Congress has made its intent known through explicit statutory language, the courts' task is an

6    easy one." *English v. General Elec. Co.*, 496 U.S. 72, 78-79 (1990) (citation omitted). Federal

7    regulations "have no less a pre-emptive effect than federal statutes." *Fidelity Fed. Sav. & Loan*

8    *Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982). Enforcement of a preempted law imposes

9    irreparable harm. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992).

10    A.    **Overview of the Nutrition Labeling and Education Act of 1990**

11    The federal government has been regulating the labeling of foods in interstate commerce

12    since Congress enacted the Pure Food and Drug Act of 1906; and since that time, there have been

13    state labeling laws that have been impliedly and expressly preempted by federal law. *See, e.g.,*

14    *McDermott v. Wisconsin*, 228 U.S. 115 (1913); *Jones v. Rath Packing Co.*, 430 U.S. 519, 540-43

15    (1977). For many years, the FDA has regulated nutrition labeling for foods in interstate commerce,

16    including restaurant foods. *See* 38 Fed. Reg. 2125 (1973); 41 Fed. Reg. 51001 (1976).

17    In 1990, Congress enacted the Nutrition Labeling and Education Act. 21 U.S.C. §§ 301,

18    343, 343-1. The NLEA has two principal substantive provisions, each of which has a

19    corresponding preemption provision. The provision relevant here requires the FDA to regulate

20    health and nutrition "claims" made about food. 21 U.S.C. § 343(r). This power extends to all food

21    in interstate commerce, including restaurant food (with limited exceptions not applicable here). 21

22    U.S.C. § 343(r)(5)(B). State laws about making nutrient content claims in the labeling of food—

23    including restaurant food—are preempted to the extent that they impose requirements that are not

24    identical to the federal regulatory regime. 21 U.S.C. § 343-1(a)(5).

25    Another provision of the NLEA sets forth detailed requirements for nutrition information

26    labels (*i.e.*, the familiar "Nutrition Fact Panel" on packaged food). 21 U.S.C. § 343(q). The NLEA

27    does not require restaurants to post nutrition information labels, and restaurant food is excluded

28

1  from operation of the corresponding express preemption provision.  21 U.S.C. §§ 343(q)(5)(A),

2  343-1(a)(4).

3      Thus, the dispositive preemption issue is this:  when restaurants post statements of

4  nutritional amount on their menus—*e.g.*, "100 calories"—are such statements "claims" within the

5  meaning of the NLEA and implementing regulations?  *See* 21 U.S.C. § 343(r)(1); 21 C.F.R.

6  § 101.13(b)(1).  If so, they are covered by the express preemption provision that corresponds to

7  subsection 343(r), and non-identical state laws are preempted.  21 U.S.C. § 343-1(a)(5).  If the

8  statements are not "claims" within the meaning of the statute, state laws about them are not

9  preempted by the NLEA's express preemption provisions.  21 U.S.C. § 343-1(a)(4).

10      **B.      Under the NLEA, Statements Describing the Amount of Calories Are "Claims"**

11      Subsection (r) declares food "misbranded" if it bears a "claim" unless the claim comports

12  with applicable regulations.  *See* 21 U.S.C. §§ 343(r)(1), (r)(2)(A)(i).  The statute goes on to instruct

13  the FDA to promulgate regulations that "permit statements describing the amount and percentage of

14  nutrients in food which are not misleading and are consistent with the terms defined in [§ 343(r)]."

15  NLEA, Pub. L. No. 101-535, § 3(b)(1)(A)(iv), 106 Stat. 4501 (set out in Historical Notes to 21

16  U.S.C.A. § 343).  Thus, Congress specifically intended that the FDA promulgate regulations

17  governing "statements describing the amount" of calories and other nutrients—such as "100

18  calories."  Such statements are "claims" under the statute if they meet the FDA's regulatory

19  definitions of "claims."

20      **C.      Under FDA Regulations, Statements Describing the Amount of Calories Are**

21          **"Claims"**

22      Consistent with these statutory directives, FDA regulations confirm that a statement

23  describing the amount of calories in numerical terms is a "claim" within the meaning of the statute

24  and regulations.  In 21 C.F.R. § 101.13(b)(1), the FDA defines an "expressed nutrient content

25  claim" as "any direct statement about the level (or range) of a nutrient in the food, e.g., 'low

26  sodium' or '***contains 100 calories***.'"  21 C.F.R. § 101.13(b)(1) (emphasis supplied).  Thus, the

27  statement "contains 100 calories" is a claim.  *See New York State Rest. Ass'n v. New York City Bd.*

28  *of Health*, 509 F. Supp. 2d 351, 359-60 (S.D.N.Y. 2007) ("*NYSRA I*") ("[The definition in Section

- 7 -

1    101.13(b)(1)] appears to cover both an obvious characterization ('low sodium') as well as a simple

2    statement about the amount of a nutrient in a food ('contains 100 calories')....Thus the FDA

3    regulations treat a simple factual statement as to a nutrient amount as within the scope of § 343(r)

4    and subject to (although expressly permitted by) FDA regulations.").

5          The FDA's regulations, promulgated after notice and comment, are of "controlling weight,"

6    *United States v. Haggar Apparel Co.*, 526 U.S. 380, 392 (1999), "binding in the courts unless

7    procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute."

8    *United States v. Mead Corp.*, 533 U.S. 218, 227 (2001); *see Alaska Trojan P'ship v. Gutierrez*, 425

9    F.3d 620, 628 (9th Cir. 2005) ("When a statute or regulation defines a term, that definition controls,

10    and the court need not look to the dictionary or common usage.").

11    **D.     Restaurants Have Flexibility in Disclosing Nutritional Information**

12          The FDA has promulgated a special rule for nutrient content claims by restaurants.  21

13    C.F.R. § 101.10.  The rule expressly grants restaurants flexibility to present accurate information

14    concerning nutrient claims in any reasonable manner:

15                 Nutrition labeling in accordance with § 101.9 [specifying nutrition
16                 facts required on labels] shall be provided upon request for any
        restaurant food or meal for which a nutrient content claim . . . is
17                 made, except that information on the nutrient amounts that are the
        basis for the claim (e.g., "low fat, this meal provides less than 10
18                 grams of fat") may serve as the functional equivalent of complete
        nutrition information as described in § 101.9.  Nutrient levels may be
19                 determined by nutrient data bases, cookbooks, or analyses or by other
        reasonable bases that provide assurance that the food or meal meets
20                 the nutrient requirements for the claim.  Presentation of nutrition
        labeling may be in various forms, including those provided in
21                 § 101.45 [concerning certain unprocessed foods] and other reasonable
22                 means.

23    21 C.F.R. § 101.10.  Thus, the FDA has given restaurants great flexibility to decide how to

24    communicate nutrient information to customers and how to determine nutrient levels.  For example,

25    a restaurant may communicate nutrition information through in-store signs, posters, brochures,

26    notebooks or charts, as contemplated in 21 C.F.R. § 101.45.  Restaurants also may communicate

27    nutrition claims through various "Nutritional Facts" formats set out in 21 C.F.R. § 101.9.

28

- 8 -

1  Section 101.10 allows restaurants to present nutrition information through "other reasonable means"

2  as well.

**E.     The NLEA Preemption Provision Applies to the Ordinance**

4       The NLEA expressly preempts state laws like Santa Clara County's Ordinance, in which a

5  state or local entity "directly or indirectly" establishes any requirement respecting nutrition "claims"

6  that is "not identical to" the regulatory requirements of federal law. 21 U.S.C. § 343-1(a)(5).

7  Because the Ordinance imposes requirements different from (*i.e.*, "not identical to") the federal

8  regulations, it is expressly preempted by the NLEA and void under the Supremacy Clause.

9       The preemption statute provides, in part:

10          no State or political subdivision of a State may directly or indirectly
            establish under any authority or continue in effect as to any food in
11          interstate commerce —

12                                    * * *

13          (5) any requirement respecting any claim of the type described
            in section 343(r)(1) of this title, made in the label or labeling
14          of food that is *not identical to* the requirement of section
            343(r) of this title, except a requirement respecting a claim
15          made in the label or labeling of food which is exempt under
            section 343(r)(5)(B) [concerning certain kinds of claims by
16          restaurants about cholesterol, saturated fat and dietary fiber
            and nutrients determined by the FDA to increase the risk of
17          disease]....

18  21 U.S.C. § 343-1(a)(5) (emphasis supplied).

19       There can be no doubt that the Ordinance imposes requirements "respecting any claim of the

20  type described in section 343(r)(1)" because statements of the amount of calories, saturated fat,

21  trans fat, carbohydrates and sodium *are* nutrient content "claims." And the Ordinance imposes

22  requirements not "identical" to those of the federal law and its accompanying regulations. 21

23  C.F.R. § 101.10. In contrast to the significant flexibility afforded by § 101.10, the County dictates

24  the content and presentation of nutritional claims.

**F.     Theories Advanced in *NYSRA* Are Inconsistent with the NLEA and the FDA's
        Regulatory Definition of "Claim"**

27  Santa Clara County's Ordinance is not the first of its kind. New York City promulgated a

- 9 -

1  similar regulation in December 2006.[3]  After a federal district court struck down that regulation on

2  preemption grounds (*NYSRA I*, 509 F. Supp. 2d at 362-63), New York passed a revised version.

3  The district court then upheld the revised regulation. *See New York State Rest. Ass'n v. New York*

4  *City Bd. of Health*, No. 08 Civ. 1000, 2008 WL 1752455 (S.D.N.Y. Apr. 16, 2008) ("*NYSRA II*").

5  The decision in *NYSRA II* is on appeal to the Second Circuit.

6          In the *NYSRA* cases, New York City and its *amici* have advanced three theories against

7  preemption.  These theories all center on the question whether a statement of nutritional amount—

8  *e.g.*, "100 calories"—is a "claim" within the meaning of the statute and regulations.  *First*, New

9  York City argued that only *qualitative* statements (*e.g.* "low in fat") should be considered "claims"

10  and that *quantitative* statements (*e.g.*, "100 calories") should not be considered "claims" under the

11  statute.  The District Court rejected that theory in *NYSRA I*.  *Second*, New York City argued that

12  statements of nutrition "mandated" by a state or municipality are not "claims."  Although the

13  District Court in *NYSRA II* adopted that theory, New York City effectively abandoned it on appeal.

14  *Third*, the Second Circuit invited the FDA to file an *amicus* brief.  Although the FDA agreed that

15  these first two arguments are incorrect, the FDA offered a third argument against preemption:  there

16  is a provision of the NLEA that excludes from the category of "claims" statements of nutrient

17  amounts that appear as part of Nutrition Fact Panels; and that provision should also apply to

18  statements on restaurant menus.  (The Second Circuit has yet to rule on this theory.)  We discuss

19  these theories below.

### 1.   NLEA and FDA Regulations Do Not Distinguish Between Qualitative and Quantitative Statements

22          The first theory offered by New York City was that the statement "100 calories" is not a

23  "claim" within the meaning of the NLEA because it is a "quantitative" statement rather than a

24  "qualitative" statement.  This theory ignores the FDA's controlling regulations.  The FDA defines

25  an "expressed nutrient content claim" as "***any direct statement*** about the level (or range) of a

---

[3] The City and County of San Francisco enacted a comparable ordinance, Ordinance 40-08 (amending San Francisco Health Code §§ 468-468.8), on March 24, 2008.  On July 3, 2008, Plaintiff filed an action challenging the constitutionality of Ordinance 40-08 in the United States District Court for the Northern District of California.

1    nutrient in the food, e.g., 'low sodium' or '*contains 100 calories*.'" 21 C.F.R. § 101.13(b)(1)

2    (emphasis supplied). "Any direct statement" is different from "any qualitative statement."

3            The FDA did not merely define "claim" to include "any direct statement" such as "contains

4    100 calories." It also went on to add regulations governing what are permissible and what are

5    impermissible express and implied claims. Subsection 101.13(i) thus provides that a label "may

6    contain a *statement* about the *amount* or percentage of a nutrient," so long as "[t]he statement does

7    not in any way implicitly characterize the level of the nutrient in the food [such implicit

8    characterizations being subject to other subparagraphs] and it is not false or misleading in any

9    respect (e.g., '*100 calories*' or '*5 grams of fat*')." 21 C.F.R. § 101.13(i)(3) (emphasis supplied).  In

10    short, the FDA regulations promulgated under authority of subsection (r) define a "claim" to include

11    "contains 100 calories" and expressly permit a claim of "100 calories."

12            Section 3(b)(1)(A)(iv) of the NLEA specifically instructed the FDA to promulgate such a

13    regulation—*i.e.*, one that would "permit statements *describing the amount and percentage of*

14    *nutrients* in food which are not misleading and are consistent with the terms defined in [§ 343(r)]."

15    Pub. L. No. 101-535, § 3(b)(1)(A)(iv), 106 Stat. 4501 (emphasis supplied) (set out in Statutory Note

16    to 21 U.S.C.A. § 343).  This provision also instructs the agency that its regulations "shall identify

17    claims described in section [343(r)(1)(A)] which comply with section [343(r)(2)]." *Id.*

18    § 3(b)(1)(A)(i).

19            The FDA's notice of final rulemaking for these regulations confirms the agency's intent to

20    govern simple factual information like "100 calories." During the notice and comment period, the

21    FDA was asked to *exclude* statements about "simple factual information" from the definition of

22    "nutrient content claim" on the theory that such a statement is not "a claim that 'characterizes the

23    level of any nutrient'" within the meaning of the statute.  58 Fed. Reg. 2302, 2303 (Jan. 6, 1993).

24    The comment argued that "a statement of the type contained in nutrition labeling—for example, that

25    a food contains 25 calories per serving...—is not a claim characterizing the level of the nutrient."

26    *Id.*  Based on the statutes discussed above, the FDA rejected that contention, embraced the view that

27    a quantitative factual statement about the amount of a nutrient is a "claim" that "characterizes the

28    level" of the nutrient within the meaning of the statute, and promulgated final and binding

- 11 -

1  regulations to that effect.  The comment had argued that section 403(r)(1) of the Act excluded from

2  the category of claims quantitative statements like those that appear in the Nutrition Fact Panel.  But

3  the FDA pointed out that the words of 403(r)(1) as well as the legislative history of the provision

> specifically state[] that the identical information [i.e., the identical
> information that would be required in the nutrition fact panel required
> by subsection (q)] will be subject to the descriptor requirements if it is
> included in a statement in another portion of the label (136 Cong-
> ressional Record H5841 (July 30, 1990))…. Furthermore, section
> 3(b)(1)(A)(iv) of the 1990 amendments provides that the mandated
> regulations "shall permit statements describing the amount and
> percentage of nutrients in food which * * * are consistent with the
> terms defined in section 403(r)(2)(A)(i) of such Act." Again, if
> statements of the amount and percentage of nutrients were not subject
> to section 403(r)(1)(A) of the act, there presumably would have been
> no need for Congress to express its desire that such claims be
> permitted by the regulations.  Accordingly, FDA concludes that
> section 403(r)(1)(A) of the act and therefore these final regulations
> apply to statements of the amount of a nutrient in food as well as to
> statements of the level of a nutrient in food.

13  58 Fed. Reg. at 2303-04 (emphasis supplied).  The court in *NYSRA I* found these regulations

14  dispositive on this argument.  *NYSRA I*, 509 F. Supp. 2d at 359-60.

### 2.    Definition of "Claim" Does Not Distinguish Between Voluntary and Mandatory Statements

17    In deciding *NYSRA I*, the district court suggested in *dicta* that the NLEA's definition of

18  "claims" covers only "voluntary" statements, and that statements "mandated" by state law are not

19  "claims." New York City altered its regulation as the *NYSRA I* court had suggested.  In *NYSRA II*,

20  the district court upheld the altered regulation.  *NYSRA II*, 2008 WL 1752455, at *5.

21    The district court's decision in *NYSRA II* that only "voluntary" statements are "claims"

22  under the NLEA ignores the FDA's regulatory definition of "claim" (which definition the district

23  court correctly found controlling in *NYSRA I*).  The "voluntary/mandatory" theory cannot be

24  reconciled with the FDA's dispositive definition.  The FDA's definition says that a "claim" is "***any***

25  direct statement." 21 C.F.R. § 101.13(b)(1).  It does not say that a "claim" is "any ***voluntary*** direct

26  statement."  Furthermore, the FDA's regulations *do* use the word "voluntary" in another section.  In

27  permitting (but not mandating) certain statements on the nutrition information fact panel, section

28  101.9 specifies that those "permitted" statements on the nutrition panel are "voluntary."  In each

- 12 -

1    instance, the word appears as "VOLUNTARY" in capital letters. 21 C.F.R. § 101.9(c). In contrast,

2    the word "voluntary" does *not* appear at all in the regulatory definition of claims, further

3    emphasizing that "claim" is not limited to "voluntary" statements.[4]

4         Further, the purpose of a preemption statute is to preclude state mandates. If the

5    "voluntary/mandatory" distinction were accepted, the very thing the preemption statute is designed

6    to prevent—state mandates—would be removed from the coverage of the statute by the very fact

7    that the state mandates it. A federal statute that expressly prohibits non-identical state mandates

8    would become ineffective by the very fact that a locality adopts a non-identical state mandate. That

9    is not a sensible way to read a preemption statute.

10        Finally, the "voluntary/mandatory" distinction would lead to an anomalous conflict between

11   state and federal law with regard to statements that all agree are "claims" under the NLEA. Under

12   the "voluntary/mandatory" theory, states or localities could mandate sellers of packaged foods to

13   "disclose" on the front label the number of calories (or any other nutrient). Similarly, if a state or

14   locality were to "mandate" labeling of "low sodium" foods, the preemption statute would not apply

15   because the statements would not be "voluntary" and thus would not be "claims" under the

16   "voluntary/mandatory" distinction. Yet it is beyond dispute that "low sodium" is a "claim" under

17   the NLEA—one of the very examples used in the definition of expressed nutrient "claims" in

18   section 101.13(b)(1) of the FDA's regulations.

19        **3.    21 U.S.C. § 343(r)(1) Does Not "Carve Out" Certain Claims from the**

20        **Reach of That Provision**

21        At the request of the Second Circuit, the FDA submitted an *amicus* brief in the appeal of

22   *NYSRA II.* The FDA rejected the two theories advanced by New York City. However, it came up

23   with a third theory against preemption. The FDA argued that the statement "100 calories" on a

24   menu is not a "claim" because a portion of the statute "carves [it] out of the scope of nutrient

25

26   [4] Section 101.9(c) of the FDA's regulations lists those statements that <u>must</u> be on the fact panel and
     those that are permitted but not mandated. The former include "calories." The latter (non

27   mandatory) are: 21 C.F.R. § 101.9(c)(1)(iii) (calories from saturated fat), (2)(iii) (polyunsaturated
     fat), (2)(iv) (monounsaturated fat), (5) (potassium), (6)(i)(A) (soluble fiber), (6)(i)(B) (insoluble

28   fiber), (6)(iii) (sugar alcohol), (6)(iv) (other carbohydrates).

1   content claims." Brief of *Amicus Curiae* Food and Drug Administration at 12, *New York State*

2   *Restaurant Ass'n v. New York City Bd. of Health*, No. 08-1892-cv (2d Cir. May 29, 2008) ("FDA

3   Br."). According to the *amicus* brief, the carve-out appears in the unnumbered portion of section

4   343(r)(1), which provides, in part:

> [1] A statement of the type required by paragraph (q) [2] that appears
> as part of the nutrition information required or permitted by such
> paragraph is not a claim….

7   21 U.S.C. § 343(r)(1).

8       To come within the carve-out, the statement must meet both portions of the statutory

9   sentence. It is true that a statement such as "100 calories" is "[a] statement of the type required by

10  paragraph (q)." But such a statement in isolation on a menu does not "appear as part of the nutrition

11  information required or permitted by such paragraph." In its Second Circuit brief, the FDA argued

12  (incorrectly) that a statement of calories on the menu in a restaurant "appears as part of the nutrition

13  information required or permitted by such paragraph [(q)]" (21 U.S.C. § 343(r)(1))—and is

14  therefore "not a claim"—on the theory that a menu is "a place appropriate for such information at

15  the point of purchase." FDA Br. 12. The FDA's *amicus* brief warrants no deference, as it does not

16  comport with the statute or the FDA's regulations, is contrary to what the FDA said in its notice of

17  rulemaking (p. 12 *supra*) and was not "arrived at after, for example, a formal adjudication or notice-

18  and-comment rulemaking." *See Christensen v. Harris County*, 529 U.S. 576, 587 (2000).[5]

19      Contrary to the FDA's *amicus* brief theory, the statute does not say "appears in a place

20  appropriate for such information at the point of purchase." It says "appears as part of the nutrition

---

22  [5] *See also Alaska Trojan P'ship v. Gutierrez*, 425 F.3d 620, 628, 630 (9th Cir. 2005) ("[a]n agency's
    interpretation of a regulation must 'conform with the wording and purpose of the regulation'";
23  rejecting agency's interpretation of regulatory term as it created internal inconsistency within the
    regulation as a whole) (citation omitted); *Crown Pac. v. Occupational Safety & Health Review*
24  *Comm'n*, 197 F.3d 1036, 1038-40 (9th Cir. 1999) ("we need not defer to the Secretary [of Labor]'s
    interpretation where an 'alternative reading is compelled by the regulation's plain language'";
25  declining to defer in the case before it, as the Secretary's construction "stretches the plain language
    of the regulation beyond its 'plain and natural' meaning") (citation omitted); *Downey v. Crabtree*,
26  100 F.3d 662, 666 (9th Cir. 1996) (where Bureau of Prison's program statements "are not subject to
    the 'rigors of the Administrative Procedure Act,'" they are, "only 'entitled to some deference'";
27  rejecting agency's interpretation of statutory term because, "[w]hen the Bureau's 'interpretation
    is…in conflict with the plain language of the statute, deference is [not] due'") (citations omitted;
28  alteration to text in original).

- 14 -

1    information required or permitted by such paragraph [(q)]." 21 U.S.C. § 343(r)(1). An isolated

2    statement of nutritional amount does not "appear[] as part of the nutrition information required or

3    permitted by [subsection (q)]." Subsection (q) does not require or permit such isolated statements.

4    Rather, it requires a comprehensive and uniform set of nutrition information, requiring the

5    presentation of *complete* nutrition information and permitting the inclusion of certain optional

6    nutrients (*e.g.*, potassium). Subsection (q) reads, in part: "nutrition information that provides—the

7    serving size, * * * the number of servings…per container, * * * the total number of calories…in

8    each serving, * * * the amount of the following nutrients:  [t]otal fat, saturated fat, cholesterol,

9    sodium, total carbohydrates, complex carbohydrates, sugars, dietary fiber, and total protein

10   contained in each serving, * * * [and] any vitamin, mineral, or other nutrient required [or permitted

11   by regulation]." 21 U.S.C. § 343(q)(1); *see* NLEA, Pub. L. No. 101-535, § 2(b)(1)(C) (1990) (set

12   out in historical notes after 21 U.S.C.A. § 343). Isolated statements of calories or other nutrients do

13   not "appear as part" of the comprehensive nutrition information demanded by subsection (q).

14   Rather, they highlight the importance of limited aspects of the food.

15           Following enactment of the NLEA, the FDA promulgated a regulation implementing the

16   statutory text quoted above. 21 C.F.R. § 101.13(c). The regulation represents the FDA's

17   interpretation of the statute and was promulgated after notice and comment. That regulation

18   contains three elements controlling when the "carve out" applies and when it does not. The

19   regulation provides:

20               **[1]** Information that is required or permitted by § 101.9…to be
               declared in nutrition labeling, and **[2]** that appears as part of the
21               nutrition label, is not a nutrient content claim and is not subject to the
               requirements of this section. **[3]** If such information is declared
22               elsewhere on the label or in labeling, it is a nutrient content claim and
               is subject to the requirements for nutrient content claims.
23

24   21 C.F.R. § 101.13(c) (emphasis supplied). The County's Ordinance does not satisfy any of these

25   three elements.

26           1.      Section 101.13(c) makes clear that the "carve out" applies only to "[i]nformation that

27   is required or permitted by § 101.9…to be declared in nutrition labeling." 21 C.F.R. § 101.13(c)

28   (element **[1]** quoted above). The FDA promulgated section 101.9 under instructions from Congress

- 15 -

1    that the agency ensure that the public can understand the "relative significance [of the information]

2    in the context of a total daily diet." NLEA, § 2(b)(1)(A) (set out in Historical and Statutory Notes

3    to 21 U.S.C.A. § 343). Section 101.9 thus specifies that the "nutrition information" to be declared

4    in "nutrition labeling" must reflect uniformly determined serving sizes (§ 101.9(b)), must declare a

5    uniform and comprehensive set of information (§ 101.9(c)), and must appear in specified formats

6    (§ 101.9(d)).

7        The Ordinance fails to meet these requirements. To begin, the Ordinance does not apply

8    "per serving," but instead requires total number of calories, total number of grams of saturated fat,

9    total number of grams of trans fat, total number of grams of carbohydrates and total number of

10   milligrams of sodium. Santa Clara County Ord. Code § A18-353(a). The Ordinance requires

11   menus to list the gross number of nutrients in any menu item—even an item intended to be shared.

12       In addition, the Ordinance requires only selected statements of nutritional amount, not the

13   uniform set of nutrition information demanded in 21 C.F.R. § 101.9(c). Section 101.9(c) states that

14   "nutrition information" in nutrition labels and nutrition labeling "shall contain" a uniform set of

15   nutrition information required by subsection (q) of the statute. The required nutrients are: calories,

16   calories from fat, fat, saturated fat, trans fat, cholesterol, sodium, carbohydrate, dietary fiber, sugars,

17   protein, vitamins and minerals. 21 C.F.R. § 101.9(c). The regulation also specifies that "[n]o

18   nutrients or food components other than those listed in this paragraph as either mandatory or

19   voluntary may be included within the nutrition label." *Id.*

20       Finally, section 101.9(d) sets out the formatting requirements for the presentation of the

21   "[n]utrient information specified in paragraph (c) of this section." 21 C.F.R. § 101.9(d)(1). The

22   regulations include the familiar Nutrition Fact Panel as a "sample label [that] illustrates the

23   provisions of paragraph (d) of this section." 21 C.F.R. § 101.9(d)(12). The regulations also specify

24   a format for "nutrition labeling information" for certain multiple items. Such information "may be

25   presented in charts with horizontal or vertical columns or as a compilation of individual nutrition

26   labels." 21 C.F.R. § 101.45(a)(3). Restaurants may present nutritional information in conformity

27   with section 101.45. *See* 21 C.F.R. § 101.10. The Ordinance is different from these formatting

28

- 16 -

1  requirements. It requires statements of nutritional amount "next to" each menu item, in the case of

2  menu boards, or "next to or beneath" each menu item, in the case of menus.

3        Thus, the Ordinance fails to meet the first element of section 101.13(c). It does not mandate

4  "information that is required or permitted by § 101.9…to be declared in nutrition labeling," because

5  it does not meet the serving size, uniform content, or formatting requirements of section 101.9.

6        **2.**     The Ordinance fails to meet the second element of section 101.13(c): the statement

7  must "appear as part of the nutrition label." The statute defines "labels" and "labeling." The statute

8  defines a "label" as any "display of written, printed, or graphic matter ***upon the immediate***

9  ***container*** of any article." 21 U.S.C. § 321(k) (emphasis supplied). In contrast, it defines "labeling"

10  more broadly—as "all labels ***and*** other written, printed, or graphic matter (1) upon any article or

11  any of its containers or wrappers, or (2) accompanying such article." 21 U.S.C. § 321(m) (emphasis

12  supplied). Menus are not "labels," even though they are "labeling." *See Public Citizen, Inc. v.*

13  *Shalala,* 932 F. Supp. 13, 16-17 (D.D.C. 1996); Food Labeling; Nutrient Content Claims and Health

14  Claims; Restaurant Foods, 61 Fed. Reg. 40320, 40322-23 (Aug. 2, 1996).

15        The regulation chose the word "label" for its second element, and a menu is not a "label."

16  Because a menu is not part of a "label," a statement on a menu cannot be part of a "nutrition label."

17  (Of course, the result would be the same if the regulation used the phrase "appears as part of the

18  nutrition label or the nutrition labeling," because the regulations repeatedly refer to "nutrition

19  labeling" to encompass the gamut of requirements under section 101.9.)

20        **3.**     The third element of the regulation provides that if the information is "declared

21  elsewhere on the label or in labeling, it is a nutrient content claim." 21 C.F.R. § 101.13(c) (element

22  [3] quoted above). In other words, if the statement appears anywhere other than in the nutrition

23  labels, it *is* a "claim." Recently, sellers of some packaged foods have begun listing the number of

24  calories per serving on the front panel of their foods—particularly in "100 calorie" packages of

25  snack foods. The FDA agrees that, under the NLEA and its implementing regulations, these

26  statements—"100 calories"—are "claims." FDA Br. 16. It makes no sense that the isolated

27  statement "100 calories" on the front of a package would be a "nutrient content claim" but the same

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR DECLARATORY RELIEF AND A PRELIMINARY
INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1   isolated statement "100 calories" on a menu in a restaurant would not be a claim. That distinction

2   ignores the common-sense meaning of "claim" and the whole point of regulating claims.

3        The only time the statute and regulations carve out a quantitative statement from the

4   definition of "claim" is when that statement appears as part of the comprehensive nutrition

5   information containing the complete set of information contemplated by subsection (q) and

6   complying with section 101.9's requirements for serving size, content, and format. That limitation

7   makes sense. The nutrition information panel is uniform and consistent for all foods. A statement

8   within a nutrition information panel is not a "claim," because such a statement is not "claiming"

9   anything. It is not a selective message about one aspect of the food, but is part of a comprehensive

10  statement about *all* the information. An isolated statement about a single nutrient is different—such

11  a statement uses the isolated fact to communicate a specific message about the food. This is as true

12  for restaurants as it is for packaged foods.

13  **G.    Plaintiff's Interpretation Harmonizes Requirements of the NLEA**

14       In both *NYSRA I* and *NYSRA II*, the New York City Board of Health argued that, under

15  NYSRA's theory of the case, states would be preempted from taking any action at all concerning

16  nutrition labeling in restaurants, thus rendering the exclusion for restaurants under section 343-

17  1(a)(4) meaningless. This is incorrect.

18       Section 343-1(a)(5) permits a role for the states with respect to nutrition information

19  labeling in restaurants. A state or local law that requires full nutrition information labeling in

20  accordance with subsection (q) and sections 101.9 and 101.10 of the FDA's regulations would not

21  be preempted. Complete nutrition labeling falls within the unnumbered portion of section 343(r)(1),

22  which excludes from the definition of a "claim"—and thus from the preemptive scope of

23  section 343-1(a)(5)—a statement that "appears as part of the nutrition information required or

24  permitted by [paragraph (q)]." 21 U.S.C. § 343(r)(1) [unnumbered portion]. By operation of

25  section 101.10, a restaurant could comply with the formatting and presentation requirements of such

26  a law using "reasonable means." 21 C.F.R. § 101.10 ("Presentation of nutrition labeling may be in

27  various forms, including those provided in § 101.45 and other reasonable means."). Under such a

28  state law, restaurants would be required to disclose full nutrition information—something they are

1    not required to disclose by federal law. But they would be afforded the flexibility that the FDA

2    deemed appropriate for restaurants.

3        Any other reading would subject restaurants to multiple, inconsistent local regulations about

4    both the content and format of nutrition information. The FDA cannot force restaurants into the

5    comprehensive national regulatory regime, but states and localities can require restaurants to

6    comply with the federal regime. Allowing states and localities to pick and choose among the

7    features of subsection (q) would undermine the NLEA's goal of comprehensive, uniform nutrition

8    information and would impose the potential chaos and confusion of scores, hundreds, or even

9    thousands of localities with differing requirements for what has to be disclosed and how.

10   II.    THE CALIFORNIA RETAIL FOOD CODE PREEMPTS THE ORDINANCE

11       The County's Ordinance is further preempted by the California Retail Food Code. Article

12   XI, section 7 of the California Constitution provides that "[a] county or city may make and enforce

13   within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with

14   general laws." Cal. Const. art. XI, § 7. When there is a conflict between a local law and state law,

15   the state law preempts the local law.

16       The CRFC, Cal. Health & Safety Code § 113703 *et seq.*, regulates the retail sale of food,

17   including food served at restaurants, on a statewide basis. The CRFC provides that, with certain

18   exemptions not applicable here, "it is the intent of the Legislature to occupy the whole field of

19   health and sanitation standards for retail food facilities, and the standards set forth in this part and

20   regulations adopted pursuant to this part shall be exclusive of all local health and sanitation

21   standards relating to retail food facilities." Cal. Health & Safety Code § 113705.

22       The "whole field" occupied by the CRFC includes the labeling of food in restaurants,

23   including nutrition information. *See* Cal. Health & Safety Code § 114089(a), (b)(5). The CRFC

24   does not call for statements of calories or other nutrition information on menus or elsewhere in

25   restaurants. By contrast, the Ordinance requires that certain nutrition information be displayed on

26   menus and elsewhere within the restaurant.

27       The requirements of the Ordinance thus fall within the CRFC's fully occupied field of

28   "health and sanitation standards for retail food facilities." The absence of a requirement under the

- 19 -

1   CRFC to display calories and other information on menus does not mean that localities are free to

2   impose it. California's legislature addressed nutrition information in restaurants and chose not to

3   include menu labeling or the other requirements that the County wishes to impose. Last year, the

4   California state legislature passed a bill that would have imposed menu labeling requirements in

5   restaurants, but Governor Schwarzenegger vetoed it.[6] The state's specific decision to forgo menu

6   labeling regulation is preemptive. *Sherwin-Williams Co. v. City of Los Angeles*, 4 Cal. 4th 893, 897

7   (1993) ("A conflict exists if the local legislation duplicates, contradicts, or enters an area fully

8   occupied by general law, either expressly or by legislative implication.") (internal quotations

9   omitted); *cf. Arkansas Elec. Coop. Corp. v. Arkansas Pub. Serv. Comm'n*, 461 U.S. 375, 384 (1983)

10  (under the Supremacy Clause, "a federal decision to forgo regulation in a given area may imply an

11  authoritative federal determination that the area is best left *un*regulated, and in that event would

12  have as much preemptive force as a decision to regulate.").

13  **III.    THE ORDINANCE VIOLATES THE FIRST AMENDMENT RIGHTS OF PLAINTIFF'S MEMBERS**

14          **A.    The Ordinance Will Cause Irreparable Harm by Impermissibly Compelling**
15          **Speech**

16          When a preliminary injunction is sought to prevent infringement of First Amendment rights,

17  a plaintiff "can establish irreparable injury sufficient to merit the grant of relief by demonstrating

18  the existence of a colorable First Amendment claim." *Sammartano v. First Judicial District Court,*

19  *in and for County of Carson City*, 303 F.3d 959, 973 (9th Cir. 2002) (internal quotations and

20  citations omitted). Even if the merits of a plaintiff's First Amendment claim are not clearly

21  established at the preliminary injunction stage of litigation, "the fact that a case raises serious First

22  Amendment questions compels a finding that there exists the potential for irreparable injury, or that

23  at the very least the balance of hardships tips sharply in [plaintiff's] favor." *Id.* (internal quotations

24  and citations omitted). For purposes of the issuance of a preliminary injunction "'[t]he loss of First

25

26

---

27  [6] Veto Message by Governor Schwarzenegger of California Senate Bill 120 (Oct. 14, 2007),
    attached hereto as Appendix Exhibit H ("Inflexible mandates applied sporadically are not an
28  effective way to continue our progress in educating Californians about healthy living.").

1  Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable

2  injury.'" *Id.* (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

3        The Ordinance infringes on the restaurants' First Amendment freedoms, causing them

4  irreparable harm by compelling them to speak. The First Amendment guarantees "both the right to

5  speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714

6  (1977). The right to refrain from speaking "serves the same ultimate end as freedom of speech in its

7  affirmative aspect." *Pacific Gas & Elec. Co. v. Public Utilities Comm'n of California*, 475 U.S. 1,

8  11 (1986) (citation and internal quotations omitted). Compelled speech, like bans on speech,

9  violates "the fundamental rule of protection under the First Amendment," namely "that a speaker

10  has the autonomy to choose the content of his own message." *Hurley v. Irish-American Gay,*

11  *Lesbian & Bisexual Group of Boston*, 515 U.S. 557, 573 (1995).

12        The right not to speak "applies not only to expressions of value, opinion, or endorsement,

13  but equally to statements of fact the speaker would rather avoid." *Hurley*, 515 U.S. at 573-74

14  (citations omitted); *see Riley v. National Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 797-98

15  (1988) (refusing to distinguish earlier cases "simply because [these cases] involved compelled

16  statements of opinion while here we deal with compelled statements of 'fact': either form of

17  compulsion burdens protected speech.").

18        This protection against compelled speech also extends to commercial speech. *See United*

19  *States v. United Foods, Inc.*, 533 U.S. 405, 410 (2001); *Zauderer v. Office of Disciplinary Counsel*

20  *of the Supreme Court of Ohio*, 471 U.S. 626, 651 (1985) ("[U]njustified or unduly burdensome

21  disclosure requirements might offend the First Amendment by chilling protected commercial

22  speech."); *International Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67, 71 (2d Cir. 1996) ("The right

23  not to speak inheres in political and commercial speech alike....").

24        The Ordinance impermissibly compels speech in violation of the Plaintiff's First

25  Amendment rights. That total numbers of calories, fat, carbohydrates and sodium are statements of

26  "fact" does not change the analysis. In requiring restaurants to present calorie counts on menu

27  boards prominently next to the menu item, the County's Ordinance forces restaurants to voice two

28  different government viewpoints: (1) patrons *must* consider the caloric content of food when

1  ordering in a restaurant; and (2) calories are the only nutritional criterion that patrons must consider

2  when making their food selections.  On menus, the Ordinance demands that customers focus only

3  on the calories, saturated fat, trans fat, sodium and carbohydrates—not on the complete set of

4  nutrients covered under federal law.

5          By design and effect, the Ordinance forces customers to look at the number of calories in a

6  meal before they order food in a restaurant.  Under the Ordinance, it will not be possible to buy a

7  meal in certain restaurants without being forced to look at calorie counts, regardless of whether the

8  individual wants to look at them or not.  Additionally, by forcing restaurants to post calories on their

9  menu boards, the County is requiring them to speak in a way that communicates the County's

10  message regarding the *significance* of calories.  Many restaurants affected by the Ordinance already

11  voluntarily provide calorie information to their consumers side-by-side with other pertinent

12  nutritional information, as required by the FDA.  Calories stated in isolation, divorced from other

13  nutritional content, present a very different message, namely that calories should be the only

14  nutritional criterion that consumers should consider when making their food selection.  Plaintiff

15  strongly disagrees with this message.  In compelled-speech cases, the message triggering First

16  Amendment scrutiny may be the *significance* of the facts.  *See International Dairy*, 92 F.3d at 71-72

17  (striking down a law that required labeling to disclose the presence of rBST growth hormone in

18  milk and accepting plaintiff's argument that the law "compel[led] them 'to convey a message

19  regarding the ***significance*** of rBST use that is expressly contrary to their views.'") (emphasis

20  supplied; internal quotations omitted).

21      **B.      Plaintiff Is Likely to Succeed on the Merits**

22          For nearly 30 years, the Supreme Court has reviewed burdens on lawful and non-misleading

23  commercial speech by requiring the government to prove that its regulation will directly advance a

24  substantial public interest in a manner that is narrowly drawn to achieve the government's objective.

25  *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York*, 447 U.S. 557, 564 (1980).

26  More recently, the Supreme Court has questioned whether this intermediate level of scrutiny is

27  adequate to protect commercial speech and has applied stricter scrutiny to laws that compel

28

1    commercial speech. *United Foods*, 533 U.S. at 409-11. Under either standard, the County's

2    Ordinance cannot survive review.

### 1.    The Ordinance Fails Under *Central Hudson*

4    In *Central Hudson*, the Supreme Court articulated a four-part test for determining whether a

5    government restriction on commercial speech violates the First Amendment. *See Central Hudson*,

6    447 U.S. at 566. This test applies to all regulations on speech—speech that is restricted as well as

7    speech that is compelled. Under this test, a court must determine: (1) whether the regulated

8    expression concerns lawful activity and is not misleading; (2) whether the asserted governmental

9    interest is substantial; (3) whether the regulation directly advances the asserted interest; and

10   (4) whether it is not more extensive than is necessary to serve that interest. *Id.*

11   The first two factors of the *Central Hudson* test cannot be disputed. The County cannot

12   contend that menu boards without calorie information are misleading or concern unlawful activity:

13   menus are speech plainly within the protection of the First Amendment. For its part, Plaintiff

14   agrees that the state has a substantial interest in public health. The County promulgated the

15   Ordinance in order to further its public health goal of "combat[ing] the serious public health crisis

16   resulting from obesity." Santa Clara County Ord. Code § A18-351. The County, however, is not

17   able to satisfy the last two factors of the *Central Hudson* test. It cannot demonstrate that the

18   Ordinance directly advances public health to a material degree or that the Ordinance is narrowly

19   tailored to achieve its stated goal.

### a.    The Ordinance Does Not Advance the County's Asserted Interest in Preventing Obesity in a "Direct and Material Way"

22   To survive scrutiny under *Central Hudson*, the County must prove that the Ordinance

23   advances the government's asserted, substantial interest in a "direct and material way." *Edenfield v.*

24   *Fane*, 507 U.S. 761, 767 (1993). The burden of justifying a restriction on commercial speech rests

25   with the proponent of the restriction. *Id.* at 770. "[M]ere speculation or conjecture" will not suffice

26   to sustain this burden. *Id.* Rather, the County "must demonstrate that the harms it recites are real

27   and that its restriction will in fact alleviate them to a material degree." *Id.* at 771. Otherwise, "'a

28   State could with ease restrict commercial speech in the service of other objectives that could not

- 23 -

1   themselves justify a burden on commercial expression.'" *Rubin v. Coors Brewing Co.*, 514 U.S.

2   476, 487 (1995) (quoting *Edenfield*, 507 U.S. at 771); *accord Greater New Orleans Broad. Ass'n v.*

3   *United States*, 527 U.S. 173, 188 (1999).

4       Nowhere does the County assert that requiring restaurants to post calorie, saturated fat, trans

5   fat, carbohydrate, or sodium information will have a direct effect on obesity rates or the health of its

6   citizens.  In fact, the County cites to no authority or literature to support this contention.  As Dr.

7   David B. Allison of the University of Alabama stated, **"there is not competent and reliable**

8   **evidence that providing restaurant patrons with calorie information on menu items will**

9   **reduce individual or population levels of obesity."**  Allison Decl. pp. 29-30 (emphasis in

10  original).  Dr. Allison went on to state that the only things that could be drawn from current

11  knowledge are speculation and "conjecture."  *Id.* at 33.

12      If the Ordinance *were* supported by evidence, why limit a law—passed to address a "health

13  crisis"—to only a handful of the County's restaurants?[7]  If posting calories actually reduces obesity

14  rates, why does the County not apply the Ordinance to all restaurants, rather than just a few?  Under

15  the *Central Hudson* test, the Supreme Court has struck down laws based in part on the fact that the

16  government applied laws differently to different groups without being able to put forth a cogent

17  reason for the discrepancy.  *See Greater New Orleans Broad. Ass'n*, 527 U.S. at 191, 193;

18  *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 425-28 (1993).  Here, the County has no

19  convincing reason why its Ordinance hinges on whether the restaurants are affiliated with chains.

        b.    **The Ordinance's Infringement on Speech Is More Extensive Than**
              **Necessary to Serve the County's Asserted Interest**

22      Even when the government can demonstrate that a law advances the state interest in a

23  "direct and material way," it must still employ a means "narrowly tailored to achieve the desired

24  objective."  *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 556 (2001) (internal quotations omitted).

---

[7] Santa Clara County Supervisor Don Gage of the Santa Clara County Board of Supervisors has stated that the County's Ordinance will affect "between six and eight" restaurant chains.  Bay City News, *South Bay Leaders To Chain Restaurants: Show Us The Calories* (June 3, 2008), *available at* http://www.nbc11.com/news/16479021/detail.html, attached hereto as Appendix Exhibit G.

- 24 -

1    A restriction on speech is "more extensive than necessary" if "less intrusive" alternatives are

2    available. *Rubin*, 514 U.S. at 491.

3         In this case, there are many alternatives for providing customers with caloric information in

4    restaurants that would not so heavily burden restaurants' First Amendment rights by co-opting their

5    most important communication tool and using it to convey a message with which they disagree.

6    These alternatives include signs directing consumers to comprehensive nutritional information at

7    the restaurants, posters with complete nutritional information, food wrappers with such information,

8    counter mats with such information, stanchions and flip-charts with such information, and

9    prominently displayed brochures. All these alternatives are acceptable under the FDA's regulation

10   governing restaurants' claims. 21 C.F.R. § 101.10. The Ordinance, by contrast, requires restaurants

11   to make statements of the amount of calories on menu boards in the specific manner compelled by

12   the Ordinance.

13        **2.    The Ordinance Fails Under *United Foods***

14        In *United Foods*, the Supreme Court held that a monetary assessment imposed on mushroom

15   growers pursuant to a federal act to fund advertisements of mushrooms violated the First

16   Amendment because it compelled certain growers to subsidize commercial speech with which they

17   disagreed. *United Foods*, 533 U.S. at 411-16. The government used the assessments to pay for

18   generic advertising to promote the sale of mushrooms. *Id.* at 408. The plaintiff objected because it

19   did not want to support a generic advertising campaign that promoted all mushrooms; it wanted to

20   convey a message that its mushrooms were superior to mushrooms grown by other producers. *Id.* at

21   411.

22        As the Supreme Court explained, even in the context of commercial speech, the government

23   simply may not force a private party to convey the *government's* message as if it were the private

24   party's message when the private party wishes to convey a different message or no message at all.

25   *Id.*; *accord Pacific Gas*, 475 U.S. at 15. Indeed, this is a stronger case of compelled speech than

26   *United Foods*. As the Court recognized in *United Foods*, forcing a party to speak is *worse* than the

27   injury in *United Foods*, where the plaintiff was "required simply to support speech by others, not to

28   utter the speech itself." 533 U.S. at 413. Here, the restaurants are being forced to convey the

- 25 -

1    County's message from their own signage, inevitably leading consumers to mistakenly assume that

2    the posting of calories conveys the restaurants' *own* point of view.

3              **3.    Rational Basis Review Is the Wrong Standard**

4              The Supreme Court has consistently applied either intermediate or heightened scrutiny to

5    restrictions on commercial speech. In contrast, rational basis review, a standard that is highly

6    deferential to government regulation, is rarely invoked in First Amendment analysis. The Supreme

7    Court has found that this weakest level of scrutiny can only be used in circumstances when there is

8    a need to protect consumers who might otherwise be misled. *See Zauderer v. Office of Disciplinary*

9    *Counsel of the Supreme Court of Ohio*, 471 U.S. 626, 651 (1985). This case is not one of those

10   circumstances.

11             In *Zauderer*, the state disciplined a lawyer for advertising that the client would pay "no fee"

12   if the case was unsuccessful, but did not reveal that clients would be liable for litigation costs even

13   if their law suits were unsuccessful. *Id* at 635. The court upheld this disclosure requirement based

14   on its finding that omission of this information could mislead consumers into thinking that the

15   attorney's representation was entirely free of charge. *Id.* at 652-53. In upholding the state rule, the

16   Court explained that "an advertiser's [First Amendment] rights are adequately protected as long as

17   disclosure requirements are reasonably related to the *State's interest in preventing deception of*

18   *consumers.*" 471 U.S. at 651 (footnote omitted; emphasis supplied).

19             In *NYSRA II*, the court applied the rational basis test, relying on *National Electric*

20   *Manufacturers Ass'n v. Sorrell*, 272 F.3d 104 (2d Cir. 2001), a Second Circuit case which

21   dramatically extended *Zauderer* by stating that the government need only satisfy a rational basis test

22   in order to compel commercial disclosures. 272 F.3d at 114-15. That is an incorrect reading of

23   *Zauderer*, which does not hold that *all* commercial disclosure requirements are subject to only a

24   rational basis test. *Zauderer* held that disclosure requirements can be mandated by the State when

25   they further the "State's interest in preventing deception of consumers." *Zauderer*, 471 U.S. at 651

26   (footnote omitted). In the many years since *Zauderer*, the Supreme Court has never applied the

27   rational basis standard to non-misleading commercial speech. Indeed, in *United Foods*—decided

28   16 years after *Zauderer*—the Court expressly rejected a wider application of rational basis review

- 26 -

1   and limited the *Zauderer* standard to laws necessary to prevent deception.  The Court noted there

2   was no suggestion that the compelled speech at issue in *United Foods* was "somehow necessary to

3   make voluntary advertisements nonmisleading for consumers."  *United Foods*, 533 U.S. at 416.

4        Moreover, the Supreme Court's commercial speech cases decided after *Zauderer* reflect an

5   increasing recognition that commercial speech is of vital importance to First Amendment values.

6   As the Supreme Court explained in *United Foods*, "[t]he subject matter of the speech may be of

7   interest to but a small segment of the population; yet those whose business and livelihood depend in

8   some way upon the product involved no doubt deem First Amendment protection to be just as

9   important for them as it is for other discrete, little noticed groups in a society which values the

10  freedom resulting from speech in all its diverse parts."  533 U.S. at 410.  *See Edenfield*, 507 U.S. at

11  767.

12       In this case, the analytical framework required by *Central Hudson* and its progeny is more

13  than adequate to balance the government's interests against the free-speech interests of Plaintiff's

14  members.  There is no reason to believe that other important disclosure requirements would be

15  jeopardized by continuing to apply *Central Hudson* as the Supreme Court has instructed, leaving

16  *Zauderer* to the field of misleading commercial speech.  The most familiar commercial disclosure

17  requirements protect consumers from being misled.  Others arise out of government findings,

18  following extensive study, that the products have a potential to cause harm, as with cigarettes or

19  alcohol.  These disclosure requirements easily pass muster under *Central Hudson*.  Unlike those

20  products, calories are not inherently dangerous.  To the contrary, people cannot survive without

21  consuming calories.  Disclosures concerning inherently dangerous products are fundamentally

22  different from what is happening here:  the County is forcing only a handful of the County's

23  vendors to highlight prominently one aspect of their products (calories) that is not dangerous *per se*

24  for the express purpose of discouraging consumers from buying the product.  Additionally, there is

25  a vast difference between a government-mandated label in a standardized format (which no one

26  would confuse as the vendor's own speech) and the government-mandated statements of calories

27  here, on the restaurants' most prominent and valuable communications tool—menu boards—in a

28  format designed to force customers to digest the government's message before they buy a meal.

- 27 -

1  IV.   THE ORDINANCE VIOLATES THE FREE SPEECH RIGHTS OF PLAINTIFF'S MEMBERS
2        GUARANTEED BY THE CALIFORNIA CONSTITUTION

3         The California Constitution guarantees the right for "[e]very person [to] freely speak, write

4  and publish his or her sentiments on all subjects, being responsible for the abuse of this right.  A law

5  may not restrain or abridge liberty of speech or press."  Cal. Const. art. I, § 2(a).  "[A]rticle I's free

6  speech clause is ""'broader' and 'greater'"" than the First Amendment [to the U.S. Constitution]."

7  *Gerawan Farming, Inc. v. Kawamura*, 33 Cal. 4th 1, 15 (2004) ("*Gerawan II*").  The California

8  Constitution's protection of speech "on all subjects" extends without limitation to non-misleading

9  commercial speech.  *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 959 (2002).  Article I, section 2

10 "comprises both a right to speak freely and also a right to refrain from doing so at all, and is

11 therefore put at risk both by prohibiting a speaker from saying what he otherwise would say and

12 also by compelling him to say what he otherwise would not say."  *Gerawan Farming, Inc. v. Lyons*,

13 24 Cal. 4th 468, 491 (2000) ("*Gerawan I*").

14        As described above, the Ordinance compels Plaintiff's members to speak a message,

15 dictated by the government, that they would rather not deliver and to say things they would not

16 otherwise say.  Such a limitation on free speech triggers review under article I, section 2:

17               [A]rticle I's right to freedom of speech, without more, would *not*
                 allow compelling one who engages in commercial speech to say
18               through advertising what he otherwise would not say, when his
                 message is about a lawful product or service and is not otherwise false
19               or misleading.

20 *Gerawan I*, 24 Cal. 4th at 509 (emphasis in original).  In other words, lawful, non-misleading

21 commercial speech is protected by article I, section 2.  *Id.*  Restaurant food is a lawful product and

22 there is nothing misleading about a menu (*i.e.*, "Hamburger, $1.99").

23        Article I, section 2 affords *at least* intermediate scrutiny to cases implicating article I rights

24 of commercial speakers.  In *Gerawan II*, the California Supreme Court specifically rejected the

25 argument that a compelled subsidy can "pass muster simply because it is rationally based."  33 Cal.

26 4th at 22.  There, the California Supreme Court adopted the *Central Hudson* test as the standard for

27 evaluating compelled subsidies and struck down the law there at issue, even though it passed muster

28 under the First Amendment.  *Id.*

- 28 -

1      Compelled speech is more odious than compelled subsidization of speech. *See United*

2  *Foods*, 533 U.S. at 413 (complainant was "required simply to support speech by others, not to utter

3  the speech itself"); *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 557 (2005) (distinguishing

4  compelled speech cases in order to apply reduced scrutiny to a compelled subsidy). Therefore, the

5  standard for compelled speech is at least as strict as for a compelled subsidy. *See, e.g., ARP*

6  *Pharmacy Servs., Inc. v. Gallagher Bassett Servs., Inc.*, 138 Cal. App. 4th 1307, 1316 (2d Dist.

7  (Div. 4), 2006) (for a commercial reporting requirement, "[t]he constitutional validity of the

8  regulation of commercial speech is tested under an intermediate standard, articulated by the United

9  States Supreme Court in *Central Hudson*, and adopted by the California Supreme Court.").

10  Regardless whether the Ordinance survives under the First Amendment, it cannot survive under

11  article I, section 2, which requires—at a minimum—application of the *Central Hudson* test.

12  Dated: July 24, 2008                    ARNOLD & PORTER LLP

13

14

15                    By: _Trenton H. Davis/SE_

16                            Trenton H. Norris
                            Attorneys for Plaintiff
17                          CALIFORNIA RESTAURANT
                               ASSOCIATION

18

19

20

21

22

23

24

25

26

27

28

- 29 -

1  TRENTON H. NORRIS (California State Bar No. 164781)
2  SARAH ESMAILI (California State Bar No. 206053)
   ARNOLD & PORTER LLP
3  90 New Montgomery Street, Suite 600
   San Francisco, CA 94105
4  Telephone: (415) 356-3000
   Facsimile: (415) 356-3099
5  trent.norris@aporter.com
   sarah.esmaili@aporter.com
6

7  PETER L. ZIMROTH (*pro hac vice* admission pending)
8  KENT A. YALOWITZ (*pro hac vice* admission pending)
   NANCY G. MILBURN (*pro hac vice* admission pending)
9  ARNOLD & PORTER LLP
   399 Park Avenue
10 New York, NY 10022
   Telephone: (212) 715-1000
11 Facsimile: (212) 715-1399
12 peter.zimroth@aporter.com
   kent.yalowitz@aporter.com
13 nancy.milburn@aporter.com

14 Attorneys for Plaintiff
   CALIFORNIA RESTAURANT ASSOCIATION
15

16             SUPERIOR COURT OF THE STATE OF CALIFORNIA
17                    FOR THE COUNTY OF SANTA CLARA
18

19 CALIFORNIA RESTAURANT          )  Case No. 1-08-CV-117885
   ASSOCIATION,                   )
20                                )
              Plaintiff,          )  [~~PROPOSED~~] ORDER GRANTING
21                                )  PLAINTIFF CALIFORNIA
          vs.                     )  RESTAURANT ASSOCIATION'S
22                                )  *EX PARTE* APPLICATION TO EXCEED
   THE COUNTY OF SANTA CLARA and  )  FIFTEEN-PAGE LIMIT ON
23 THE SANTA CLARA COUNTY PUBLIC  )  MEMORANDUM OF POINTS AND
   HEALTH DEPARTMENT,             )  AUTHORITIES SUPPORTING
24                                )  PLAINTIFF'S MOTION FOR
              Defendants.         )  DECLARATORY RELIEF AND A
25                                )  PRELIMINARY INJUNCTION
                                  )
26                                )
                                  )
27                                )
                                  )
28                                )
   _____    )

E-FILED
Jul 24, 2008 3:07 PM
David H. Yamasaki
Chief Executive Officer/Clerk
Superior Court of CA, County of Santa Clara
Case #1-08-CV-117885 Filing #G-9873
By M. Rosales, Deputy

E-FILED: Jul 24, 2008 3:07 PM, Superior Court of CA, County of Santa Clara, Case #1-08-CV-117885 Filing #G-9873

1    Having considered Plaintiff California Restaurant Association's *Ex Parte* Application To

2    Exceed Fifteen-Page Limit on Memorandum of Points and Authorities Supporting Plaintiff's

3    Motion for Declaratory Relief and a Preliminary Injunction, and all other supporting and opposing

4    arguments and papers, and finding good cause,

5    **IT IS HEREBY ORDERED:**

6    Plaintiff's Application is **GRANTED**.  Plaintiff's Memorandum of Points and Authorities

7    Supporting its Motion for Declaratory Relief and  Preliminary Injunction ("Motion"), may exceed

8    the fifteen page limit required by Cal. Rule of Court 3.1113(d), but may not exceed a total of ~~thirty-~~ 30

9    ~~seven pages~~, exclusive of the caption page, table of contents, and table of authorities.  Defendants

10   may also submit a memorandum of points and authorities supporting their opposition to the Motion

11   that does not exceed thirty-seven pages in length, exclusive of the caption page, table of contents,

12   and table of authorities.

13   Dated: _7 - 23 - 08_

14

15

16   JUDGE OF THE SUPERIOR COURT

17

18

19

20

21

22

23

24

25

26

27

28

---

[PROPOSED] ORDER GRANTING PLAINTIFF CALIFORNIA RESTAURANT ASSOCIATION'S EX PARTE
APPLICATION TO EXCEED FIFTEEN PAGE LIMIT ON MEMORANDUM OF POINTS AND AUTHORITIES

1  TRENTON H. NORRIS (California State Bar No. 164781)
2  SARAH ESMAILI (California State Bar No. 206053)
   ARNOLD & PORTER LLP
3  90 New Montgomery Street, Suite 600
   San Francisco, CA  94105
4  Telephone:  (415) 356-3000
   Facsimile:  (415) 356-3099
5  trent.norris@aporter.com
6  sarah.esmaili@aporter.com

7  PETER L. ZIMROTH (*pro hac vice* admission pending)
8  KENT A. YALOWITZ (*pro hac vice* admission pending)
   NANCY G. MILBURN (*pro hac vice* admission pending)
9  ARNOLD & PORTER LLP
   399 Park Avenue
10 New York, NY  10022
11 Telephone:  (212) 715-1000
   Facsimile:  (212) 715-1399
12 peter.zimroth@aporter.com
   kent.yalowitz@aporter.com
13 nancy.milburn@aporter.com

14 Attorneys for Plaintiff
   CALIFORNIA RESTAURANT ASSOCIATION
15

16            SUPERIOR COURT OF THE STATE OF CALIFORNIA
17                   FOR THE COUNTY OF SANTA CLARA
18

19 CALIFORNIA RESTAURANT            )  Case No. _____
   ASSOCIATION,                     )
20                                  )  [PROPOSED] ORDER GRANTING
                    Plaintiff,      )  APPLICATION FOR ADMISSION OF
21                                  )  PETER L. ZIMROTH AS COUNSEL *PRO*
          vs.                       )  *HAC VICE*
22                                  )
   THE COUNTY OF SANTA CLARA and    )
23 THE SANTA CLARA COUNTY PUBLIC    )
   HEALTH DEPARTMENT,               )
24                                  )
                    Defendants.     )
25                                  )
                                    )
26                                  )
                                    )
27                                  )
                                    )
28 _____  )

E-FILED

Jul 31, 2008 8:50 AM
David H. Yamasaki
Chief Executive Officer/Clerk
Superior Court of CA, County of Santa Clara
Case #1-08-CV-117885 Filing #G-9982
By R. Walker, Deputy

_____

     [PROPOSED] ORDER GRANTING APPLICATION FOR ADMISSION OF
          PETER L. ZIMROTH AS COUNSEL *PRO HAC VICE*

1  The Court has reviewed the Application of Plaintiff California Restaurant Association To

2  Admit Peter L. Zimroth as Counsel *Pro Hac Vice* in this action and the papers filed in support

3  thereof (the "Application").

4  After consideration of the papers presented regarding the Application, the Court has

5  determined that the Application complies with the requirements of Rule 9.40 of the California Rules

6  of Court and that the applicant satisfies all of the requirements for admission as counsel *pro hac*

7  *vice* in this action.  Accordingly, based upon the foregoing, and good cause appearing therefor,

8  IT IS HEREBY ORDERED that Peter L. Zimroth is hereby admitted as counsel *pro hac*

9  *vice* to represent Plaintiff California Restaurant Association in this action.

10

11

12  DATED:  7-30-08

13  JUDGE OF THE SUPERIOR COURT

14  Joseph H. Huber

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -

[PROPOSED] ORDER GRANTING APPLICATION FOR ADMISSION OF
PETER L. ZIMROTH AS COUNSEL *PRO HAC VICE*

1   TRENTON H. NORRIS (California State Bar No. 164781)
2   SARAH ESMAILI (California State Bar No. 206053)
    ARNOLD & PORTER LLP
3   90 New Montgomery Street, Suite 600
    San Francisco, CA  94105
4   Telephone: (415) 356-3000
    Facsimile: (415) 356-3099
5   trent.norris@aporter.com
6   sarah.esmaili@aporter.com

7   PETER L. ZIMROTH (*pro hac vice* admission pending)
8   KENT A. YALOWITZ (*pro hac vice* admission pending)
    NANCY G. MILBURN (*pro hac vice* admission pending)
9   ARNOLD & PORTER LLP
    399 Park Avenue
10  New York, NY  10022
    Telephone: (212) 715-1000
11  Facsimile: (212) 715-1399
12  peter.zimroth@aporter.com
    kent.yalowitz@aporter.com
13  nancy.milburn@aporter.com

14  Attorneys for Plaintiff
    CALIFORNIA RESTAURANT ASSOCIATION
15

**E-FILED**

Jul 31, 2008 8:44 AM
David H. Yamasaki
Chief Executive Officer/Clerk
Superior Court of CA, County of Santa Clara
Case #1-08-CV-117885 Filing #G-9981
By R. Walker, Deputy

16              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

17                   **FOR THE COUNTY OF SANTA CLARA**

18

19  CALIFORNIA RESTAURANT            )   Case No. _____
    ASSOCIATION,                     )
20                                   )   [PROPOSED] **ORDER GRANTING**
                Plaintiff,           )   **APPLICATION FOR ADMISSION OF**
21                                   )   **KENT A. YALOWITZ AS COUNSEL**
         vs.                         )   *PRO HAC VICE*
22                                   )
    THE COUNTY OF SANTA CLARA and    )
23  THE SANTA CLARA COUNTY PUBLIC    )
    HEALTH DEPARTMENT,               )
24                                   )
                Defendants.          )
25                                   )
                                     )
26                                   )
                                     )
27                                   )
                                     )
28                                   )

─────────────────────────────────────────────────────

    [PROPOSED] ORDER GRANTING APPLICATION FOR ADMISSION OF
        KENT A. YALOWITZ AS COUNSEL *PRO HAC VICE*

1    The Court has reviewed the Application of Plaintiff California Restaurant Association To

2 Admit Kent A. Yalowitz as Counsel *Pro Hac Vice* in this action and the papers filed in support

3 thereof (the "Application").

4    After consideration of the papers presented regarding the Application, the Court has

5 determined that the Application complies with the requirements of Rule 9.40 of the California Rules

6 of Court and that the applicant satisfies all of the requirements for admission as counsel *pro hac*

7 *vice* in this action.  Accordingly, based upon the foregoing, and good cause appearing therefor,

8    IT IS HEREBY ORDERED that Kent A. Yalowitz is hereby admitted as counsel *pro hac*

9 *vice* to represent Plaintiff California Restaurant Association in this action.

10

11

12 DATED: ___7-30-08___

13             JUDGE OF THE SUPERIOR COURT

                Joseph H. Huber

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -

[PROPOSED] ORDER GRANTING APPLICATION FOR ADMISSION OF
KENT A. YALOWITZ AS COUNSEL *PRO HAC VICE*