1    ANN MILLER RAVEL, County Counsel (S.B. #62139)
     MIGUEL MÁRQUEZ, Assistant County Counsel (S.B. #184621)
2    TAMARA LANGE, Lead Deputy County Counsel (S.B. #177949)
     JENNIFER S. SPRINKLES, Deputy County Counsel (S.B. #211493)
3    OFFICE OF THE COUNTY COUNSEL
     70 West Hedding Street, East Wing, Ninth Floor
4    San Jose, California 95110-1770
     Telephone: (408) 299-5900
5    Facsimile: (408) 292-7240

6    Attorneys for Defendants
     COUNTY OF SANTA CLARA AND
7    THE SANTA CLARA COUNTY
     PUBLIC HEALTH DEPARTMENT

8

9                          UNITED STATES DISTRICT COURT

10                        NORTHERN DISTRICT OF CALIFORNIA

11

12

13   CALIFORNIA RESTAURANT            No.    C08-03685 CW
     ASSOCIATION,
14                                    **DEFENDANT'S OPPOSITION TO**
                  Plaintiff,          **PLAINTIFF'S MOTION FOR**
15                                    **DECLARATORY RELIEF AND**
     v.                               **PRELIMINARY INJUNCTION**
16
     THE COUNTY OF SANTA CLARA and    Date:  August 28, 2008
17   THE SANTA CLARA COUNTY PUBLIC    Time: 2:00 p.m.
     HEALTH DEPARTMENT,               Dept.: Ctrm. 2, 4th Floor
18                                    Judge: Honorable Claudia Wilken
                  Defendants.
19

20

21

22

23

24

25

26

27

28

     Opposition to Motion                                    C08-03685 CW

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ........................................................ 1

II.     FACTUAL BACKGROUND ............................................. 2

III.    STANDARD OF REVIEW ............................................. 2

IV.     THE FEDERAL NLEA DOES NOT PREEMPT ORDINANCE 300.793 ......... 3

        A.    Federal Preemption Principles .................................. 4

        B.    The Presumption Against Preemption ........................... 5

        C.    The NLEA's Plain Language and Statutory Structure Establish That
              Mandatory Menu Labeling in Restaurants Is Not Preempted .............. 6

              1.    Ordinance 300.793 does not regulate "Packaged Goods." .......... 7

              2.    Ordinance 300.793 does not regulate "Claims." ................. 7

                    a.    Ordinance 300.793 does not require restaurants to
                          "characterize" the level of any nutrient. ................... 8

                                (A) characterizes the level of any nutrient which
                                is of the type required . . . to be in the label or
                                labeling of the food . . . , or ....................... 8

                                (B) characterizes the relationship of any nutrient
                                which is of the type required . . . to be in the label or
                                labeling of the food to a disease or a health-related
                                condition . . . . ..................................... 8

                    b.    Ordinance 300.793 requires that nutrition information
                          appear as a unit on menus and menu boards, the very
                          location identified in the NLEA for disclosure of restaurant
                          nutrition information. ............................... 8

        D.    The NLEA's legislative history shows Congress' clear intent to preserve
              state and local authority to regulate nutrition information in restaurants. .... 11

        E.    The FDA's interpretations shows Congress' clear intent to preserve
              state and local authority to regulate nutrition information in restaurants. .... 12

V.      THE CALIFORNIA RETAIL FOOD CODE DOES NOT
        PREEMPT ORDINANCE 300.793 ..................................... 13

        A.    The CRFC Governs Food Safety, Not Disclosure of Nutritional
              Information ..................................................... 14

              1.    Nothing in the CRFC Suggests that "Health and Sanitation
                    Standards" Include Information Disclosure Requirements. ......... 15

ANN MILLER RAVEL
County Counsel
County of Santa Clara
San Jose, California

i

C08-03685 CW

2.      No Patterned Approach to Food Labeling Can Be Discerned
        in the CRFC. ............................................... 15

VI.   CRA IS NOT LIKELY TO SUCCEED ON THE MERITS
      ON ITS FIRST AMENDMENT CLAIM ................................. 16

      A.    Ordinance 300.793 Requires Disclosure of Factual and Uncontroversial
            Information And, Therefore, Is Subject to Rational Basis Review ......... 16

            1.      Zauderer Applies Whenever Compelled Disclosure of Factual
                    and Uncontroversial Information Is Reasonably Calculated to
                    Educate the Public to Advance Public Health or to Serve the
                    General Welfare. .......................................... 18

            2.      Mandatory Menu Labeling Is Reasonably Calculated to
                    Educate Consumers and to Advance Public Health. ............... 21

      B.    Ordinance 300.793 Rationally Advances Santa Clara County's
            Interest In Protecting Consumers From Confusion and Deception ......... 22

            1.      Consumer Confusion About the Caloric Value and Fat and
                    Sodium Content of Restaurant Foods Is Rampant. ............... 22

            2       Misleading Restaurant Menus and Deceptive Advertising
                    Practices Create Consumer Confusion. ...................... 23

      C.    Local Governments Are Entitled To Attack Problems Piecemeal
            And To Take Action When the Need Is Self-Evident ................... 24

      D.    CRA Would Be Unlikely To Succeed On the Merits Even Under
            Central Hudson ............................................ 25

            1.      Chain Restaurant Menu Boards and Menus Are Misleading
                    And Not Entitled to Protection Absent The Required Calorie
                    Information .............................................. 25

            2.      Santa Clara County's Interests in Advancing Public Health,
                    Combating Consumer Confusion and Deception, and Educating
                    the Public Are All Substantial ............................... 26

            3.      Ordinance 300.793 Directly Advances the County's Interests ...... 26

            4.      Ordinance 300.793's Requirements Are Not More Extensive
                    Than Necessary to Serve the County's Substantial Interests ......... 28

VII.  CRA IS NOT LIKELY TO SUCCEED ON THE MERITS
      OF ITS CALIFORNIA FREE SPEECH CLAIM ........................... 29

VIII. CONCLUSION ...................................................... 30

1

**TABLE OF AUTHORITIES**

2

<u>**FEDERAL CASES**</u>

3

*Arcamuzi v. Continental Air Lines, Inc.*
   819 F.2d 935 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

4

*Ass'n of Nat'l Advertisers, Inc. v. Lungren*
   44 F.3d 726 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

5

6

*Auer v. Robbins*
   519 U.S. 452 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 11, 13

7

*Bank of America v. City and County of San Francisco*
   309 F.3d 551 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

8

9

*Brock v. Writers Guild of America, West, Inc.*
   762 F.2d 1349 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 11

10

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York*
   447 U.S. 557 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

11

12

*Edenfield v. Fane*
   507 U.S. 761 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

13

*Environmental Law Foundation v. Laidlaw Transit Services*
   2008 WL 2157672 (Cal. Super. Jan. 8, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

14

15

*Envtl. Def. Ctr., Inc. v. E.P.A.*
   344 F.3d 832 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19, 20, 22

16

*Exxon Mobil Corp. v. E.P.A.*
   217 F.3d 1246 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14

17

18

*International Dairy Foods Ass'n v. Amestoy*
   92 F.3d 67 (1st Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

19

*Medtronic, Inc. v. Lohr*
   518 U.S. 470 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

20

21

*National Elec. Mfrs. Ass'n v. Sorrell*
   272 F.3d 104 (2nd Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 29

22

*New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance*
   *Company* 514 U.S. 645 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

23

24

*New York State Restaurant Ass'n. v. New York City Bd. of Health*
   2008 WL 1752455 (S.D.N.Y. Apr. 16, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7, 22

25

*New York State Restaurant Ass'n. v. New York City Bd. of Health*
   545 F.Supp.2d 363 (S.D.N.Y. Apr. 18, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

26

27

*Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*
   762 F.2d 1374, 1376 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28

ANN MILLER RAVEL
County Counsel
County of Santa Clara
San Jose, California

C08-03685 CW

*Orozco v. Mukasey*
        521 F.3d 1068 (9th Cir. 2008) .............................................. 5

*Pelman v. McDonald's Corp.*
        237 F.Supp.2d 512 (S.D.N.Y. 2003) ........................................ 3

*Pharmaceutical Care Management Association v. Rowe*
        429 F.3d 294 (1st Cir. 2005) ............................................. 19

*PruneYard Shopping Ctr. v. Robins*
        447 U.S. 74, 88 (1980) ............................................... 20, 25

*Reyes v. McDonald's Corp.*
        No. 06 C 1604, 2006 WL 3253579 (N.D.Ill. Nov. 8, 2006) ..................... 3

*United States v. United Foods, Inc.*
        533 U.S. 405 (2001) .................................................. 17, 19

*Virginia Pharmacy Board v. Virginia Citizens Consumer Council, Inc.*
        425 U.S. 748 (1976) .................................................. 17, 28

*Virginian Ry. Co. v. System Federation*
        300 U.S. 515 (1937) ...................................................... 3

*Zauderer v. Office of Disciplinary Counsel*
        471 U.S. 626 (1985) ................................................. passim

**STATE CASES**

*Gerawan Farming, Inc. v. Lyons*
        24 Cal. 4th 468 (2000) .................................................. 29

*Big Creek Lumber Co. v. County of Santa Cruz*
        38 Cal. 4th 1139 (2006) ................................................. 13

*Bravo Vending v. City of Rancho Mirage*
        16 Cal. App. 4th 383 (1993) ............................................. 16

*Fisher v. City of Berkeley*
        37 Cal.3d 644 (1984) .................................................... 15

*O'Connell v. City of Stockton*
        41 Cal. 4th 1061 (2007) ................................................. 14

*People v. Teresinski*
        30 Cal. 3d 822 (1982) ................................................... 29

ANN MILLER RAVEL
County Counsel
County of Santa Clara
San Jose, California

**FEDERAL STATUTES**
**United States Code**

21 U.S.C. § 343(q) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

21 U.S.C. § 343(r) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

21 U.S.C. § 343(r)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

21 U.S.C. § 343(r)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

21 U.S.C. § 343-1(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

21 U.S.C. § 343-1(a)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

21 U.S.C.A. §343-1(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

21. U.S.C.A. §343(r)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**STATE STATUTES**
**Health & Safety Code**

Section 113703 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Section 113705 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Section 114089 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Section 114089(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Section 113810 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**FEDERAL RULES**

Rule 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

**FEDERAL REGULATIONS**

21 C.F.R. §101.13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

21 C.F.R. §101.9(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

1

## I.    INTRODUCTION

2

3

   The California Restaurant Association (CRA) seeks to prevent enforcement of Santa Clara

4

County's new menu labeling ordinance, which requires chain restaurants to post the number of

5

calories next to each item on a menu board, and to provide information about calories, fat,

6

carbohydrate and sodium on their menus.  CRA brings this challenge in the face of – or perhaps

7

because of – dramatic evidence of the public health need to provide factual nutritional information

8

about chain restaurant food so that individuals can make informed health choices.

9

   CRA claims that Santa Clara County Ordinance No. NS-300.793 (hereafter "Ordinance

10

300.793") is preempted by the Nutrition Labeling and Education Act (NLEA), a federal law that

11

requires nutrition panels commonly found on packaged foods.  NLEA also regulates when and

12

how food sellers make claims that characterize the nutritional and health benefits of their food,

13

claims such as "Healthy Choice" or "Low Calorie" as opposed to a listing of factual nutrition

14

information.  But Ordinance 300.793 does not address packaged foods or claims – it merely

15

requires the disclosure of factual nutrition information of foods prepared at chain restaurants, an

16

area of regulation that NLEA expressly leaves to states and local governments.

17

   CRA also claims that Ordinance 300.793 is preempted by the California Retail Food Code

18

(CRFC), a state law aimed at preventing food spoilage and transmission of disease, but nothing in

19

CRFC suggests that it regulates the disclosure of factual nutrition information at chain restaurants.

20

   Finally, CRA contends that Ordinance 300.793 violates its members' federal and state free

21

speech rights *not* to provide that information to consumers at the point when they are deciding

22

what to buy.  It is settled law, however, that government may require the disclosure of factual

23

information in the context of commercial speech.

24

   As a legal matter, CRA cannot establish a likelihood of success on the merits of any of

25

these claims and has not shown irreparable injury.  Accordingly, its motion should be denied.

26

27

28

Opposition to Motion                                                                                                              C08-03685 CW

1

## II.    FACTUAL BACKGROUND

2       On June 24, 2005, the Board of Supervisors of the County of Santa Clara voted

3   unanimously to adopt Ordinance No. NS 300.793, which amended Division A18 of the County

4   Ordinance Code by adding a new Chapter XXII to provide for menu labeling in chain restaurants.

5   The Ordinance mandates that chain restaurants with 14 or more locations in California post

6   calorie and nutrition information on menus and menu boards to enable the citizens of Santa Clara

7   County to make more informed health choices.  Some of the facts that led to enactment of the

8   Ordinance include:

9

10      • Even nutritionists cannot accurately assess the number of calories in restaurant foods

11          (Wootan Decl. ¶16.);

12

13      • People eat up to 200 extra calories on days when they eat fast food (Feistersheib Decl.,

14          Exh. C);

15      • Californians eat fast food an average of 3.4 times a week (*Id.*);

16      • 93% of children's meals at top chain restaurants exceed recommended calories

17          (Feistersheib Decl. ¶21);

18      • Eating at fast-food and chain restaurants is associated with being overweight (Feistersheib

19          Decl., Exh. B); and

20

21      • Obesity is second only to tobacco as a leading contributor to premature death. (Katz Decl.,

22          ¶25 and 29, attached to Fenstersheib Decl. at Exh B)

23

## III.    STANDARD OF REVIEW

24      In the Ninth Circuit, preliminary injunctive relief is available only when the moving party

25   demonstrates (1) a combination of probable success and the possibility of irreparable harm, or (2)

26   that serious questions are raised and the balance of hardship tips in its favor.  *Arcamuzi v.*

27   *Continental Air Lines, Inc.*, 819 F.2d 935, 937 (9th Cir. 1987).  "These two formulations represent

28

1   two points on a sliding scale in which the required degree of irreparable harm increases as the

2   probability of success decreases." *Id.* Under any formulation, the plaintiff "must demonstrate

3   that there exists a significant threat of irreparable injury." *Oakland Tribune, Inc. v. Chronicle*

4
5   *Pub. Co., Inc.*, 762 F.2d 1374, 1376 (9th Cir. 1985). In addition, where, as here, a case involves

6   the public interest, "[c]ourts of equity may, and frequently do, go much farther both to give and

7   withhold relief in furtherance of the public interest than they are accustomed to go when only

8   private interests are involved." *Virginian Ry. Co. v. System Federation*, 300 U.S. 515, 552

9   (1937). As discussed more fully below, CRA is not entitled to injunctive relief because it cannot

10  establish a likelihood of success on the merits. In addition, injunctive relief should be denied

11  because CRA has not made an adequate showing of irreparable harm.[1]

12
13                  IV.    **THE FEDERAL NLEA DOES NOT PREEMPT ORDINANCE 300.793**

14          CRA's assertion that Ordinance 300.793 is preempted by the federal Nutrition Labeling

15  and Education Act (NLEA) is contrary to the plain language of the statute, its legislative history,

16  and the Food and Drug Administration's implementing regulations and interpretation. Only one

17  other federal court – the Southern District of New York – has considered whether the NLEA

18  preempts a local menu labeling ordinance.[2] That court found no preemption, and the case is on

19  appeal to the Second Circuit. *New York State Restaurant Ass'n. v. New York City Bd. of Health*,

20  2008 WL 1752455 (S.D.N.Y. Apr. 16, 2008) (hereinafter "*NYSRA II*"), pending appeal, Case No.

21  08-1892-cv (2nd Cir.). Of note, the court in the New York denied NYSRA's application for a

22  stay of New York City's ordinance pending appeal. *New York State Restaurant Ass'n. v. New*

23

24  _____
    [1] Plaintiff's motion for declaratory relief should also be denied as premature regardless of the outcome on the motion
25  for a preliminary injunction.
    [2] In a related decision on the motion for a stay of enforcement of the New York City menu labeling ordinance, Judge
26  Holwell cites two other cases that address NLEA preemption of state law. *New York State Restaurant Ass'n v. New
    York City Bd. of Health*, 545 F.Supp.2d 363, 366 (S.D.N.Y. 2008) (citing *Reyes v. McDonald's Corp.*, No. 06 C 1604,
27  2006 WL 3253579 (N.D.Ill. Nov. 8, 2006) and *Pelman v. McDonald's Corp.*, 237 F.Supp.2d 512 (S.D.N.Y. 2003).
    Both cases, however, concern preemption of state fraud laws that would confer a private right of action to enforce
28  restaurant nutrition labeling. Although they are not directly applicable here, those cases support the plain reading of
    the NLEA articulated below.

    Opposition to Motion                                                                    C08-03685 CW

                                                    3

*York City Bd. of Health*, 545 F.Supp.2d 363 (S.D.N.Y. Apr. 18, 2008).

Ordinance 300.793 requires restaurants to disclose the very sort of information Congress intended to make available to the public when "select[ing] foods to protect and improve their health." 136 Cong. Rec. S16607-02 (daily ed. Oct. 24, 1990) (statement of Sen. Metzenbaum). CRA's effort to enjoin its enforcement appears to reflect a desire to avoid whatever changes in the marketplace will result when greater transparency about the nutritional content of menu items enables consumers to make informed health choices. Bassett Decl., ¶ 7 (detailing changes in menu offerings at restaurants in New York City after adoption of a menu labeling ordinance).

Disregarding long-standing rules of statutory construction, CRA urges the Court to rely on an asserted ambiguity in a single regulation to support an interpretation of the NLEA that plainly conflicts with congressional intent. In a federal regulatory scheme designed to improve public access to accurate nutritional information by requiring nutritional information for packaged goods and by restricting certain evaluative nutritional claims, CRA contends that Congress intended to create a regulatory "information blackout" for restaurant foods – on which Americans spend nearly half their food dollars and from which they receive nearly a third of their calories. Wootan Declaration ¶9; *see also* Marquez Decl. Exh. 2 at p.18 (FDA *Amicus* Brief) ("[R]eading the regulation as NYSRA proposes would exclude restaurant food from state and local regulation of labeling requirements, and therefore from the reach of *all* governmental authority to require nutrition labeling . . . ."). As discussed below, however, the plain language of the statute, the structure of the statutory scheme, the legislative history and the FDA's regulations and interpretations all reflect a careful plan to exempt from federal regulation – and to leave open to state and local regulation – the field of nutrition disclosure for restaurant foods.

### A.    Federal Preemption Principles

"In determining whether a municipal ordinance is preempted by federal law, [a court's]

task is to ascertain the intent of Congress." *Bank of America v. City and County of San Francisco*, 309 F.3d 551, 557-58 (9th Cir. 2002).  Whether local menu labeling ordinances are preempted by the NLEA is a question of first impression in the Ninth Circuit, and that court has said:

> In construing a statute in a case of first impression, [courts] look to the traditional signposts of statutory construction: first, the language of the statute itself . . . ; second, its legislative history . . . , and as an aid in interpreting Congress' intent, the interpretation given to it by its administering agency . . . .

*Brock v. Writers Guild of America, West, Inc.*, 762 F.2d 1349, 1353 (9th Cir. 1985) (citations omitted); *see also Orozco v. Mukasey*, 521 F.3d 1068, 1071 (9th Cir. 2008) (quoting *Brock*). Reflecting appropriate deference to the executive branch, when Congress "has not directly spoken to the precise question at issue," the Court turns to the administrative agency's approach "so long as it is based on a permissible construction of the statute." *Auer v. Robbins*, 519 U.S. 452, 457 (1997) (citation and internal quotation marks omitted).

### B.    The Presumption Against Preemption

To safeguard the authority of state and local government to regulate nutrition information in restaurants, Congress precluded implied preemption under the NLEA.  Pub.L. No. 101-535, § 6(c), 104 Stat. 2535, 2364 (providing the NLEA "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted.").

In addition, a presumption against preemption applies here because of the traditional role of the States in regulating matters of public health and "the assumption that the historic police powers of the States were not to be superseded by [federal statutes] unless that was the clear and manifest purpose of Congress." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Company*, 514 U.S. 645, 654-55 (1995) (internal citation omitted).  The States historically have "exercised their police powers to protect the health and safety of their

1   citizens;" because "these are primarily, and historically, ... matter[s] of local concern," the "States

2   traditionally have had great latitude under their police powers to legislate as to the protection of

3   the lives, limbs, health, comfort, and quiet of all persons." *Medtronic, Inc. v. Lohr*, 518 U.S. 470,

4   475 (1996) (internal citations and quotation marks omitted); *see also Exxon Mobil Corp. v.*

5   *E.P.A.*, 217 F.3d 1246, 1255 (9th Cir. 2000) (explaining that courts are "highly deferential" in

6   areas of traditional state regulation).  In light of these legal authorities, this Court should interpret

7   narrowly the express preemption clauses of the NLEA.  Those preemption provisions relate only

8   to packaged foods and to promotional claims, but not to the disclosure of factual nutrition

9   information of prepared foods in restaurants.

10

11          **C.     The NLEA's Plain Language and Statutory Structure Establish That
                      Mandatory Menu Labeling in Restaurants Is Not Preempted.**

12

13          Allowing local regulation of restaurant menu labeling directly advances the NLEA's

14   principle purpose, announced in the title of the statute itself:  *educating* the public by providing

15   nutrition information.  Two key provisions of the NLEA also reflect that overriding statutory

16   goal.  The "Packaged Goods" provision requires the "Nutrition Facts" panel commonly found on

17   packaged foods and defines what constitutes "nutrition information," including calories, fat and

18   sodium.  21 U.S.C. § 343(q).  The "Claims" provision authorizes the FDA to regulate when and

19   how food purveyors may assert claims about, i.e., "characterize," the nutritional content or health

20   benefits of their products.  21 U.S.C. § 343(r).  *See* Marquez Decl., Exh. 2 at p. 4 (FDA *Amicus*

21   *Brief*).  The NLEA contains two preemption provisions that correspond to its two core provisions.

22   First, it expressly preempts local laws that require nutrition labeling for packaged goods

23   ("Packaged Goods" preemption).  21 U.S.C. § 343-1(a)(4).  Second, the NLEA preempts local

24   laws that regulate promotional health or nutrient claims, such as claims that a food is "Healthy

25   Choice" or "Low Calorie."  21 U.S.C. § 343-1(a)(5).

26

27          A third key provision of NLEA is of most importance here – it specifies that local

28   Opposition to Motion                                                              C08-03685 CW

governments are free to regulate nutrition information in restaurants:

> [N]o State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce . . .
> (4) any requirement for nutrition labeling of food . . . *except a requirement for nutrition labeling of food [which is served in restaurants.]*

21 U.S.C.A. §343-1(a)(4) (emphasis added). Thus, taken as a whole, the NLEA (1) exempts food "served in restaurants" from mandatory *federal* nutrition labeling, (2) requires restaurants to comply with *federal* regulations of *claims* that "expressly or by implication . . . characterize . . . the level of any nutrient," 21 U.S.C. § 343(r)(1)(A), and (3) authorizes *state and local governments* to regulate *nutrition information* in *restaurants*.

### 1.    Ordinance 300.793 does not regulate "Packaged Goods."

As CRA acknowledges, Ordinance 300.793 is not preempted by the NLEA's Packaged Goods preemption provision because the Ordinance regulates only labeling of prepared foods at restaurants, not of packaged goods. *See* Pl. Mem. 6.

### 2.    Ordinance 300.793 does not regulate "Claims."

CRA essentially argues that Ordinance 300.793 is preempted because requiring uniform posting of particular nutritional information on menus and menu boards intrudes upon the FDA's regulatory authority to determine when and how restaurants may assert "claims" about the nutrient content of their menu items. Pl. Mem. 9. But as Judge Holwell in the Southern District Of New York concluded in *NYSRA II,* 2008 WL 1752455 at *4, and as the FDA has made clear in its implementing regulations and through its amicus participation in the *NYSRA* litigation, NLEA's preemption of "claims" does not apply to local laws that require disclosure of factual nutritional information. The CRA grossly misinterprets the plain language of the statute.

/ / /

/ / /

1

                    **a.**      ***Ordinance 300.793 does not require restaurants to "characterize"***
                                    ***the level of any nutrient.***

2

3

     A claim, as defined by the NLEA, must characterize the nutritional information required

4

on a label.  Specifically, a claim –

5

                **(A)** characterizes the level of any nutrient which is of the type
                required . . . to be in the label or labeling of the food . . . , or

6

7

                **(B)** characterizes the relationship of any nutrient which is of the
                type required . . . to be in the label or labeling of the food to a

8

                disease or a health-related condition . . . .

9

21 U.S.C. § 343(r)(1).  Thus, claims "characterize" either the information required on a label or

10

the relationship between such information and the health benefits of the food product.  They are

11

promotional statements announcing the product's health or nutrition benefits.  When a restaurant

12

is required to post the number of calories next to every item on the menu, it does not

13

"characterize" the nutrient content of those menu items – it is simply disclosing factual nutrition

14

information.  In contrast, if a restaurant posts the number of calories next to just a few items on

15

the menu, e.g., "100 calories" next to the fruit cup, the context changes: the selection of certain

16

items inherently characterizes them in relation to the others.[3]  In that context, posting the number

17

of calories effectively proclaims that the item is "Low Calorie."

18

19

     Ordinance 300.793 does not mandate statements that promote (or discourage) the

20

consumption of any particular food product.  It does not require restaurants to mark the "Healthy

21

Choice" or "Low Calorie" options.  Instead, it *uniformly* requires disclosure of the nutritional

22

value of each food choice so that the public can make informed health decisions.  These

23

disclosures do not "characterize" nutrition information.  They simply "state" the factual nutrition

24

information; therefore, they are not "claims."

25

26

---

27

[3] CRA argues that "[i]t makes no sense that the isolated statement '100 calories' on the front of a package would be a 'nutrient content claim' but the same isolated statement '100 calories' on a menu in a restaurant would not be a claim." Pl. Mem. 10.  In fact, an *isolated* statement in either context would be a claim, but Ordinance 300.793 does not require *isolated* statements; it requires uniform statements for all menu items.

28

1

     **b.**  ***Ordinance 300.793 requires that nutrition information appear as a unit on menus and menu boards, the very location identified in the NLEA for disclosure of restaurant nutrition information.***

2

3

   The NLEA makes another distinction between "claims" and factual nutritional

4

information. This distinction turns on the placement of the nutrition information. Specifically,

5

the NLEA requires that nutrition information appear together as a unit in the appropriate location;

6

otherwise, it is a claim. 21. U.S.C.A. §343(r)(1). The FDA's implementing regulation on this

7

point says:

8

9

     Information that is required or permitted by §101.9 . . . to be
declared in nutrition labeling, and that appears as part of the

10

nutrition label, is not a nutrient content claim and is not subject to
the requirements of this section. If such information is declared

11

elsewhere on the label or in labeling, it is a nutrient content claim
and is subject to the requirements for nutrient content claims.

12

13

21 C.F.R. §101.13

14

   CRA complains that the Ordinance does not require restaurants to disclose the identical

15

list of nutritional information required by section 101.9. Pl. Mem. 16. In their view, this means

16

that the Ordinance is requiring them to make claims and, therefore, is preempted. *Id.* But the

17

requirements in section 101.9 apply to Packaged Foods – not restaurants – so CRA's argument

18

fails on its premise.

19

20

   Next, CRA argues that because the menu boards on which Ordinance 300.793 requires

21

nutrition information to be posted are not packaged food nutrition labels affixed to the particular

22

items, the Ordinance essentially requires restaurants to make "claims" and, thus, the Ordinance is

23

preempted. Pl. Mem. 17. CRA writes, "The statute defines a 'label' as any 'display of written,

24

printed, or graphic matter upon the immediate container of any article,'" concluding, "[b]ecause a

25

menu is not part of a 'label,' a statement on a menu cannot be part of a 'nutrition label.'" Pl.

26

Mem. 17. Such a narrow definition would preclude any and all labeling requirements for

27

restaurants, a conclusion clearly at odds with NLEA's express authorization to state and local

28

Opposition to Motion                                 C08-03685 CW

1   government to regulate the disclosure of nutrition information by restaurants.  This distorted

2   reading also presumes that Congress intended to preclude all mandatory nutritional labeling at

3   restaurants, which would be in direct conflict with the plain language of the statute, which

4   specifies that local governments *may* establish requirements for nutrition labeling of food served

5   in restaurants.  21 U.S.C.A. §343-1(a)(4).  It would furthermore be at odds with the FDA's

6

7   *amicus brief* submitted to the Second Circuit in support of the similar ordinance enacted by New

8   York City that summarized the agency's long-standing interpretation of the regulation and the

9   statute.  In that brief, the FDA concluded that:

10              Because food served in restaurants is explicitly exempt from
                §343(q) under a referenced provision, state or municipal authority
11              to impose nutrition labeling requirements on restaurants is
                undisturbed by the NLEA. *See* Marquez Decl. Exh. 2, at p. 6.
12

13          The FDA's brief noted that the FDA interprets the term "nutrition label" to include

14   menus and menu boards in restaurants because those locations conform to a broader

15   understanding of "appropriate labeling." *See* Marquez Decl. Exh. 2, ¶¶ 19-20.  The regulations

16   acknowledge that not all food that falls under nutrition labeling laws can bear a packaging label,

17   i.e., non-packaged goods like raw fruits, vegetables, meat and fish.  Instead:

18

19              When food is not in package form, the required nutrition labeling
                information shall be displayed clearly at the point of purchase (e.g.,
20              on a counter card, sign, tag affixed to the product, or some other
                appropriate device). Alternatively, the required information may be
21              placed in a booklet, looseleaf binder, or other appropriate format
                that is available at the point of purchase.
22

23   21 C.F.R. §101.9(a)(2).  As this subsection makes clear, one such equivalent placement is at the

24   point of purchase, which, in the case of a fast-food restaurant, would be on the menu board just as

25   the Ordinance requires.  Were the regulation to be read as the CRA urges, it would be inconsistent

26   with the broader use of "labeling" employed throughout the NLEA and with the FDA's

27   interpretation of its own regulations. *See* Marquez Decl. Exh. 2, ¶18.  An agency's interpretation

28

1   of its own regulation is "controlling unless plainly erroneous or inconsistent with the regulation."

2   *Auer*, 519 U.S. at 461 (citation and internal quotation marks omitted).

3           Still, CRA maintains that since menus are not labels, then the information required by the

4   Ordinance, by definition, appears "elsewhere than on the label or labeling" and "isolated" from

5   the nutrition information, and, therefore, is a claim. Pl. Mem. 17. The Ordinance, however, does

6   not require information to appear "elsewhere" than on the nutrition labeling, since, by its very

7   terms, the location of the nutrition information designated by the Ordinance *is* the nutrition

8   labeling. If CRA were correct, then any local requirement of restaurant nutrition information

9   would be a claim and necessarily preempted by NLEA. But this would also mean that, since the

10   federal government cannot require nutrition information in restaurants, absolutely *no* government

11   authority could *ever* require restaurant nutrition information.

12

13           **D.      The NLEA's legislative history shows Congress' clear intent to preserve state
14                   and local authority to regulate nutrition information in restaurants.**

15           The NLEA's language is not "silent" with respect to preemption or "ambiguous" in that

16   regard, so the Court need not consider the legislative history to discern congressional intent.

17   *Brock*, 762 F.2d at 1353. Nevertheless, the legislative history confirms that the NLEA was not

18   intended to preempt local menu labeling laws. As Senator Hatch, a Senate co-sponsor of the bill,

19   stated, the NLEA "will help American consumers become more informed on the value of

20   improved nutrition to their health care needs." 136 Cong. Rec S16607-02 (Oct. 24, 1990)

21   (statement of Sen. Hatch). Senator Metzenbaum also explained that the goal of the statute is

22   "enabling consumers to select foods to protect and improve their health." *Id.* (statement of Sen.

23   Metzenbaum). And the day of the vote approving the Metzenbaum-Hatch amendment to the bill,

24   in the question and answer period preceding the vote, Senator Metzenbaum gave explicit

25   instructions about the application of NLEA to the local regulation of restaurants.

26

27

28   / / /

Opposition to Motion

11

C08-03685 CW

1

2

> *Because food sold in restaurants is exempt from the nutrition*
> *labeling requirements of section 403(q) (1)-(4), the bill does not*
> *preempt any State nutrition labeling requirements for restaurants.*

3

4

5

*Id.* (emphasis added).  Senator Mitchell also addressed the expectation that there would be State

and local regulation.

6

7

8

> It is also important that this program, which requires nationally
> uniform nutritional labeling, is sensitive to the regulatory roles
> played by the States.  This bill has been refined to provide national
> uniformity where it is most necessary, while otherwise preserving
> State regulatory authority where it is appropriate.

9

*Id.* (statement of Sen. Mitchell).

10

11

12

13

14

15

16

17

18

19

20

21

22

CRA makes much of the fact that Ordinance 300.793 does not require a full nutritional

panel identical to that found on Packaged Goods for every menu item.  Pl. Mem. 16.  But the

Congressional Record shows that Congress explicitly intended for states and localities to regulate

restaurant nutrition information in a manner that is consistent with nutrition labels on packaged

foods.  "Consistent" need not be "identical."  Ordinance 300.793 mandates the use of a

"consistent format and content" to make the information readable, reliable and clear to the

consumer.  The County is free to mandate the nutrition information it deems important, whether it

is three, five or fifteen different nutrition amounts.  As Senators Hatch, Metzenbaum and Mitchell

confirm in their floor statements, state and local governments were exempted from the NLEA's

preemption provision to allow them to further the statute's goals by requiring restaurants to

provide nutrition information to consumers.

23

24

**E.      The FDA's interpretations shows Congress' clear intent to preserve state and**
**local authority to regulate nutrition information in restaurants.**

25

26

27

28

The FDA has also consistently interpreted the NLEA to allow local governments to

mandate menu nutrition labeling requirements on restaurants.  In 1995, five years after the statute

was passed, the FDA provided the following information in its publication "A Guide for

Restaurants and Other Retail Establishments":

1

*Question*: Can a State require restaurant foods to bear nutrition labeling even if the food is exempt under Federal requirements?

2

*Answer*: Yes . . . . [B]ecause the act exempts restaurant foods that do not bear a claim from mandatory nutrition labeling, State requirements for the nutrition labeling of such foods would not be preempted.[4]

3

4

5

*See* Marquez Decl. Exh. 5 *FDA, Food Labeling: Questions and Answers, Volume II, "A Guide for*

6

*Restaurants and Other Retail Establishments"* (August 1995) at ¶31. Similarly, in reports

7

published in 2004 and 2006, the FDA again affirmed that states are not preempted from requiring

8

nutritional labeling of restaurant food. *See* Marquez Decl. Exh. 4 FDA Keystone Report at 74;

9

FDA, *Counting Calories: Report of the Working Group on Obesity* (2004) at V.B. And, as stated

10

11

above, an agency's interpretation of the regulations it authored and enforces is "controlling unless

12

plainly erroneous or inconsistent with the regulation." *Auer*, 519 U.S. at 461 (citation and internal

13

quotation marks omitted).

14

Every authority for statutory construction – its plain language, the legislative history, and

15

the agency regulation and interpretation – lead to the same conclusion: the CRA is grossly

16

mistaken and the Ordinance is not preempted by the NLEA.

17

18

### V.    THE CALIFORNIA RETAIL FOOD CODE DOES NOT PREEMPT ORDINANCE 300.793

19

20

Ordinance 300.793 is also not preempted by the California Retail Food Code, Cal. Health

21

& Safety Code § 113703 *et seq.* (CRFC). Under California law, the party claiming that general

22

state law preempts a local ordinance has the burden of demonstrating preemption. *See Big Creek*

23

*Lumber Co. v. County of Santa Cruz*, 38 Cal. 4th 1139, 1149 (2006). When "local government

24

25

regulates in an area over which it traditionally has exercised control," the court will presume,

26

27

28

---

[4] Interestingly, the FDA admits parenthetically that it was once wrong about this issue and has since revised its answer. "The first volume of Questions and Answers, August 1993, N95, incorrectly stated that a state would need to submit a petition, and receive a favorable response to that petition, in order to enforce State requirements for the nutrition labeling of restaurant foods." Hence, the FDA, from an initial misinterpretation, has long maintained that local government has the power to require nutrition information at restaurants independently of federal intervention.

Opposition to Motion                                                                      C08-03685 CW

1    unless there is a clear indication of preemptive intent from the Legislature, that "such regulation is

2    *not* preempted by state statute." *O'Connell v. City of Stockton*, 41 Cal. 4th 1061, 1069 (2007)

3    (emphasis in original).  Protecting and advancing public health is a core function of local

4    governance and an exercise of local police power. *See Exxon Mobil Corp. v. E.P.A.,* 217 F.3d

5    1246, 1255 (9th Cir. 2000).

6

7          Although the CRFC fully occupies the field of "health and sanitation" standards,

8    Ordinance 300.793 does not intrude upon that field.  The CRFC's health and sanitation standards

9    are aimed at preventing transmission of communicable diseases (e.g., by requiring restaurant

10   employees to wash their hands) and at preventing contamination or spoilage of restaurant foods

11   (e.g., by standardizing waste disposal).  In contrast, Ordinance 300.793 requires disclosure of

12   nutritional information.  The fact that requiring chain restaurants to post the caloric value and fat

13   and sodium content of various foods advances public health does not make the requirement a

14

15   "health standard" within the meaning of the CRFC.

16         **A.**    **The CRFC Governs Food Safety, Not Disclosure of Nutritional Information**

17         The CRFC was introduced to "safeguard public health and provide to consumers food that

18   is safe, unadulterated, and honestly presented through adoption of science-based standards."  Cal.

19   Health & Safety Code § 113703.  To achieve this purpose, the Legislature adopted "uniform

20   health and sanitation standards for retail food facilities."  Cal. Health & Safety Code § 113705.

21   These standards were adopted to "assure the people of this state" that the food purchased at retail

22

23   facilities will be "pure, safe, and unadulterated."  *Id.*  Immediately following this declaration of

24   purpose, the Legislature stated that it intended to "occupy the whole field of health and sanitation

25   standards for retail food facilities."  *Id.*[5]

26

27

28   ------
     [5] CRA does not contend that Ordinance 300.793 is preempted as duplicative or contradictory to state law, nor does CRA argue that it is impliedly preempted.

     Opposition to Motion                             C08-03685 CW

1

            1.    **Nothing in the CRFC Suggests that "Health and Sanitation Standards"**
                  **Include Information Disclosure Requirements.**

2

3        The field of "health and sanitation standards" covered by the CRFC does not include

4  restaurant menu labeling requirements.  The CRFC does not define "health," but it defines the

5  term "imminent health hazard" as a threat to health posed from a "situation that can cause food

6  infection, food intoxication, disease transmission, vermin infestation, or hazardous condition that

7  requires immediate correction or cessation of operation to prevent injury, illness, or death."

8  California Health & Safety Code § 113810.  The regulatory scheme governs such issues as

9  handwashing (§§ 113952-113961), general food safety (§§ 113980-114083), and sanitation of

10  equipment and utensils (§§ 114095-114125), and establishes an inspection and enforcement

11  scheme to be carried out by local agencies (§§ 114380-114429).  Thus, the overall statutory

12  design indicates that the CRFC regulates food safety to prevent transmission of communicable

13  diseases and food spoilage.  Nothing in the CRFC suggests that it was intended to preempt local

14

15  laws designed to ensure that consumers have access to nutritional information.

16

            2.    **No Patterned Approach to Food Labeling Can Be Discerned in the**

17               **CRFC.**

18        The CRFC does not include a single reference to food labeling or consumer information in

19  *any* of the provisions relating to health or sanitation.  The one reference to food labeling on which

20  CRA relies concerns *packaged* food labeling, and it does no more than require compliance with

21  other provisions of state and federal law.  Cal. Health & Safety Code § 114089(a), (b)(5).[6]  The

22  California Supreme Court has held that a potentially preemptive "field" of state regulation is an

23  "area of legislation which includes the subject of the local legislation, and is sufficiently logically

24  related so that a court, or a local legislative body, can detect a patterned approach to the subject."

25  *Fisher v. City of Berkeley*, 37 Cal.3d 644, 707-08 (1984).  A state statute containing a "solitary

26

27

28

[6] CRA's preemption argument rests on a single section of the CRFC that requires food "prepackaged in a food facility" to bear a label that complies with the requirements of the Sherman Food, Drug, and Cosmetic Law.  *See* Complaint 7; Cal. Health & Safety Code § 114089.  The Sherman Food, Drug, and Cosmetic Law requires that nutritional labels on packaged foods comply with the Federal Food, Drug and Cosmetic Act and certain provisions of the Code of Federal Regulations.

Opposition to Motion                                    C08-03685 CW

reference" to a particular kind of activity does not "constitute . . . a pattern of regulation" concerning that activity for purposes of preemption analysis. *See Bravo Vending v. City of Rancho Mirage*, 16 Cal. App. 4th 383, 400 (1993). The CRFC's single reference to pre-packaged food requiring compliance with another law does not establish the kind of "pattern of regulation" required to preempt Ordinance 300.793.

## VI.    CRA IS NOT LIKELY TO SUCCEED ON THE MERITS ON ITS FIRST AMENDMENT CLAIM

CRA's contention that the nutritional disclosure required by Ordinance 300.793 is subject to intermediate scrutiny under *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York*, 447 U.S. 557, 562-63 (1980), is inconsistent with basic First Amendment principles, with the Supreme Court's decision in *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 651 (1985), and with *Central Hudson* itself. Adopting CRA's interpretation of the law would hobble the legislative branches and lead to an avalanche of lawsuits challenging federal, state and local regulations that require disclosure of factual information, ranging from California's Proposition 65, which requires disclosure of the presence of toxic chemicals, to the NLEA itself.[7]

### A.    Ordinance 300.793 Requires Disclosure of Factual and Uncontroversial Information And, Therefore, Is Subject to Rational Basis Review

CRA disregards established First Amendment principles when it contends that Ordinance 300.793 is subject to the intermediate level of scrutiny applicable to laws that restrain or compel commercial speech. Pl. Memo at 26. CRA correctly observes that commercial speech is protected by the First Amendment, although it receives "less protection" than other modes of constitutionally guaranteed expression. *Central Hudson*, 447 U.S. at 562-63. And protection against compelled speech on matters of opinion does extend to commercial speakers. Pl. Memo

---

[7] *See* Brief of Professor Robert Post of Yale University Law School, and Jennifer L. Pomeranz and Kelly D. Brownell of the Rudd Center for Food Policy and Obesity at Yale University as *Amici Curiae* in Support of Defendants and in Opposition to Plaintiff's Motion for Declaratory Relief and Preliminary Injunction (hereinafter Post) at 6-7, 12 n.6 (collecting examples of federal and California regulatory schemes subject to challenge under CRA's theory).

Opposition to Motion                                                                                    C08-03685 CW

16

at 21 (citing *United States v. United Foods, Inc.*, 533 U.S. 405, 410 (2001)). But controlling Supreme Court and Ninth Circuit authority establish that because required disclosure of "factual and uncontroversial" commercial information is different in nature from compelled speech on matters of opinion, and provides an "acceptable less restrictive alternative[] to actual suppression of speech," it is subject only to rational basis review. *See Zauderer*, 471 U.S. at 651, n.14; *Central Hudson*, 447 U.S. at 565; *Envtl. Def. Ctr., Inc. v. E.P.A.*, 344 F.3d 832, 848-851 (9th Cir. 2003).

In *Zauderer*, the Court considered an Ohio rule that required attorneys to disclose in their advertising for contingent-fee representation that clients could be liable for litigation costs. 471 U.S. at 633. Rejecting the argument that Ohio's rule was akin to compelled speech concerning "politics, nationalism, religion or other matters of opinion," the Court upheld a requirement that commercial speakers "provide somewhat more information than they might otherwise be inclined to present." *Id.* at 650. The Court reasoned that the "extension of First Amendment protection to commercial speech is justified principally by the value to consumers of the information such speech provides." *Id.* at 651 (citing *Virginia Pharmacy Board v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748 (1976)). Accordingly, a speaker's "constitutionally protected interest in *not* providing any particular factual information in his advertising is minimal." *Id.* (emphasis in original). Consequently, under *Zauderer,* laws that require disclosure of factual information need only be "reasonably related" to a legitimate interest. *Id.*

The Ordinance easily satisfies that standard. Requiring disclosure of caloric values on menu boards and fat and sodium content on restaurant menus is reasonably related to Santa Clara County's legitimate governmental interest in educating consumers about the content of restaurant foods to advance public health. *See,* Fenstersheib Decl. at ¶26. Indeed, CRA implicitly concedes that it is not likely to succeed on the merits on rational basis review. Pl. Memo at 23 (asserting

1   Ordinance fails under either intermediate or strict scrutiny).

2            1.    ***Zauderer* Applies Whenever Compelled Disclosure of Factual and**
                   **Uncontroversial Information Is Reasonably Calculated to Educate the**
3                  **Public to Advance Public Health or to Serve the General Welfare.**

4        CRA contends, incorrectly, that *Zauderer* applies to mandatory disclosure of information

5   only when the government interest advanced is "preventing deception of consumers." Pl. Memo

6   at 26-27 (quoting *Zauderer*, 471 U.S. at 651).[8] Although the government interest at stake in

7   *Zauderer* was preventing consumer confusion, the decision contains no suggestion that its

8

9   reasoning is so limited. 471 U.S. at 651. To the contrary, the Court's premise – that commercial

10  speech receives First Amendment protection because the information it provides is valuable to

11  consumers – supports application of rational basis review whenever commercial disclosure

12  requirements are designed to educate consumers in the marketplace. *Zauderer* recognizes

13  generally that it would be perverse to allow commercial speakers to use the First Amendment to

14  *prevent* consumers from obtaining information when the core justification for protecting

15

16  commercial speech is to *provide* consumers with information. *Id.*; *see also* Post at 9-11.

17        The Second Circuit has held expressly that a disclosure requirement satisfies *Zauderer* if it

18  rationally advances a legitimate interest in public health by increasing consumer awareness and

19  encouraging changes in consumer behavior, even if the disclosure is "not intended to prevent

20  'consumer confusion or deception' per se." *National Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104,

21  115 (2nd Cir. 2001) (cited with approval by the Ninth Circuit in *Env. Def. Ctr., Inc.*, 344 F.3d at

22

23  851 n.27). The *Sorrell* court considered a Vermont statute that required certain manufacturers of

24  mercury-containing products to label their products with information stating that the products

25  _____
    [8] To the extent CRA argues that *Zauderer* does not apply where the government's interest is to prevent consumer
26  confusion rather than pure deception, it mischaracterizes the holding in *Zauderer*. In *Zauderer*, the compelled
    disclosure was justified by the state's reasonable "assumption that substantial numbers of potential clients would be . .
27  . *misled*," 471 U.S. at 652, and was supported by a long line of authority "emphasiz[ing] that because disclosure
    requirements trench much more narrowly on an advertiser's interests . . . warnings or disclaimers might be
28  appropriately required in order to dissipate the possibility of *consumer confusion* or deception," *id.* at 651 (internal
    marks omitted) (emphasis added).

Opposition to Motion                                                          C08-03685 CW

                                          18

1   contained mercury and should be recycled or disposed of as hazardous waste. *Id.* Applying

2   *Zauderer,* the Second Circuit observed that protecting the "robust and free flow of accurate

3   information" is the "principal First Amendment justification for protecting commercial speech,"

4   and concluded that "requiring disclosure of truthful information promotes that goal." *Id.* at 114.

5   The court held that it is sufficient that there be a "rational connection between the purpose of a

6   commercial disclosure requirement and the means employed to realize that purpose."

7

8   *Id.* at 114-15.[9]

9       Recent Ninth Circuit authority confirms that *Zauderer*'s rational basis standard applies to

10  government-mandated disclosure of "accurate, factual, commercial information" so long as the

11  purpose is consistent with "the core First Amendment values of promoting efficient exchange of

12  information." *Env. Def. Ctr., Inc.*, 344 F.3d at 851 n.27 (quoting *Sorrell,* 272 F.3d at 114).[10]  In

13  *Environmental Defense Center,* the Ninth Circuit sustained a rule promulgated by the

14

15  Environmental Protection Agency (EPA) that required municipal operators of sewer systems to

16

17  [9] CRA mistakenly relies on the First Circuit's decision in *International Dairy Foods Ass'n v. Amestoy,* 92 F.3d 67, 74
    (1st Cir. 1996).  There, the First Circuit struck down a law requiring milk producers to indicate on the label if milk

18  was from cows treated with rBST – a protein that increases milk production – holding that "consumer curiosity alone
    is not a strong enough state interest to sustain the compulsion of even an accurate, factual statement.  The decision is

19  neither controlling nor persuasive here.  It appears that the parties in that case, as well as the majority and the dissent,
    simply assumed that the First Amendment required "a substantial interest" to justify the required disclosure. *Id.* at 78

20  (Leval, J., dissenting).  That assumption cannot be reconciled with Supreme Court, Ninth Circuit and Second Circuit
    authority discussed in the text or with the First Circuit's more recent decision in *Pharmaceutical Care Management*

21  *Association v. Rowe,* 429 F.3d 294, 299 (1st Cir. 2005), applying *Zauderer*'s rational basis test and rejecting a First
    Amendment challenge to a Maine statute requiring that pharmacy benefit managers (PBMs) disclose to providers

22  certain financial arrangements with third parties.  *See* Post at 14 (analyzing and quoting decision).

23  [10] The Ninth Circuit issued its decision in *Environmental Defense Center* shortly after the United States Supreme
    Court decision in *United States v. United Foods, Inc.* CRA asserts that *United Foods* expressly limited *Zauderer* to

24  cases involving consumer deception.  Pl. Memo at 26-27.  In *United Foods,* the Court struck down an assessment that
    required a mushroom producer that wanted to advertise the superiority of its brand, to contribute funds to pay for an

25  advertising message that "mushrooms are worth consuming whether or not they are branded."  533 U.S. 405, 411
    (2001).  But nothing in the Court's brief distinction of *Zauderer* suggests that the Court meant to limit its earlier

26  authority, and *United Foods* simply is not relevant here because it did not involve mandatory disclosure of factual
    information.  *United Foods,* 533 U.S. at 416; Post at 19-20.  Indeed, the Ninth Circuit in *Environmental Defense*

27  *Center* included a footnote explaining why *United Foods* was inapposite and upheld statutorily-mandated
    dissemination of factual information designed – not to prevent consumer confusion – but to educate the public.  344

28  F.3d at 849 ("Informing the public about safe toxin disposal is non-ideological[.]"), at 851 (noting public education
    requirement was part of a comprehensive program to reduce toxic storm-water discharges); *see also* Fenstersheib
    Decl. at ¶ 25(detailing role of menu labeling in comprehensive program to reduce obesity and diabetes).

provide the public with educational materials about the impact of storm-water discharge on water

bodies and the dangers of improper waste disposal. *Id.* at 848. Petitioners objected to the EPA

rule requiring them to "distribute educational materials to the community" and to inform the

"general public of hazards" associated with illegal discharges. *Id.* They argued that the rule

would compel them to deliver EPA's "political message" in violation of the First Amendment,

and that the First Amendment's protections apply "as much to compelled statements of 'fact' as to

those of 'opinion.'" *Id.* at 848-49.

The Ninth Circuit rejected that argument, holding that the regulations in question did not

offend the First Amendment. *Id.* at 849. Applying *Zauderer*, the court held that the interests at

stake in cases involving commercial disclosure requirements are "not of the same order" as those

discussed in other free speech cases. *Id.* The court explained that the factual disclosure required

by the EPA rule was "non-ideological," involving no "affirmation of belief." *Id.* at 850 (citing

*PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 88 (1980)). The government interest at stake in

*Environmental Defense Center* involved education of the public about "safe toxin disposal." *Id.*

There was no suggestion that the public would be "deceived" in the absence of the compelled

disclosure, yet the court applied rational basis review and upheld the public education

requirement. *Id.* Thus, so long as mandatory factual disclosures are consistent with the First

Amendment goal of providing the public with information of value in the marketplace, *see*

*Zauderer,* 447 U.S. at 650, and rationally advance a legitimate governmental interest in educating

the public, a First Amendment challenge will fail.[11]

/ / /

/ / /

---

[11] "[T]he government may require the disclosure of noncontroversial, factual information in the context of commercial speech for many reasons other than protecting consumers from deception or warning consumers about "inherently dangerous" products. Such disclosures are routinely required to protect public health and to serve the general welfare. Consumer protection law is based on the belief that the disclosure of factual and uncontroversial information will promote knowledgeable consumer decision-making." *Post, supra,* at 8.

1

        **2.**    <u>**Mandatory Menu Labeling Is Reasonably Calculated to Educate**</u>
                   <u>**Consumers and to Advance Public Health.**</u>

2

3          In the Southern District of New York's recent decision upholding New York City's menu

4   labeling law, the court held that *Zauderer* and *Sorrell* "supply the proper standard of review" for

5   this kind of First Amendment claim. *See N. Y. State Rest. Ass'n v. New York City Bd. Of Health*,

6   2008 U.S. Dist. LEXIS 31451, at * 26 (S.D.N.Y. April 16, 2008) ("NYSRA II"). The court

7   observed that the "calorie content of restaurant menu items" is "purely factual and

8
   uncontroversial" commercial information. *Id.* As in *Sorrell,* the New York City menu regulation
9

10  attempted to "address a state policy interest by making information available to consumers," a

11  goal that was consistent with the First Amendment objective of providing consumers with

12  "complete and accurate commercial information." *Id.* (citing *Edenfield v. Fane*, 507 U.S. 761,

13  766 (1993)). The court concluded that such regulation "passes constitutional muster" as long as

14  there is a "rational connection" between the disclosure requirement and the government's purpose

15  in imposing it. *Id.* at *27.

16

17         As CRA does here, NYSRA argued that the required menu labeling would compel

18  restaurants to promote the government's messages that "patrons must consider the caloric content

19  of food when ordering in a restaurant" and that "calories are the only nutritional criterion that

20  patrons need to consider." *Id.* at *28; *see also* Pl. Motion 21-22. The *NYSRA II* court dismissed

21  this view, holding that the regulation did not force any restaurant either to "take a position in any

22  ongoing debate" or to make "any statement, express or implied, regarding the relative nutritional

23
  importance of calories or whether a food purchaser ought to consider this information." *Id.*
24

25  Rather, the "number of calories" in a product is "factual and uncontroversial" information;

26  "mandatory disclosure" of such information is not the same, for First Amendment purposes, as

27  "the compelled endorsement of a viewpoint." *Id.* at *29; *see also* Post at 5.

28         The same reasoning applies here. Nothing in Ordinance 300.793 restricts CRA's

Opposition to Motion                                                  C08-03685 CW

members from expressing their views or compels them to take a position on the significance of

the information they are required to provide to consumers.  Merely listing the calories contained

in each item on the menu does not amount to an ideological statement.  As the Ninth Circuit

reasoned in *Environmental Defense Center*, the petitioners in that case were free to state their own

views about the proper means of managing toxic materials, or about the rule itself, and were at

liberty to explain that their disclosures were required by law.  344 F.3d at 850.  Likewise, under

Ordinance 300.793, restaurants are free to provide additional nutritional information on their

menus and menu boards, to publicize their views about the Ordinance and the relative importance

of various nutrients in a healthy diet, and to post information clarifying that their disclosure of

factual nutritional information is required by law.  Sec. A18-353 ("information shall include, but

shall not be limited to" number of calories, grams of saturated fat, trans fat and carbohydrates and

milligrams of sodium).  Ordinance 300.793 requires disclosure of facts, not expression of a

viewpoint, ideology or message.  As the *NYSRA II* court recognized, "it would be possible to

recast any disclosure requirement as a compelled 'message'" that the required information is

important. *NYSRA II,* 2008 WL 1752455 at * 9.  That is exactly what CRA seeks to do here.  As

in *NYSRA II*, this Court should reject that argument.

> **B.     Ordinance 300.793 Rationally Advances Santa Clara County's Interest In Protecting Consumers From Confusion and Deception**

Even if *Zauderer* were limited to cases involving the need to protect consumers "who

might otherwise be misled," Pl. Memo at 26, it would govern here, for the core purpose of

Ordinance 300.793 is to advance public health by reducing both consumer confusion and outright

deception about the number of calories and amount of fat and sodium in chain restaurant foods.

> **1.     Consumer Confusion About the Caloric Value and Fat and Sodium Content of Restaurant Foods Is Rampant.**

As the FDA-commissioned Keystone Report concluded, "without nutritional information,

consumers typically are unable to assess the caloric content of foods." Pl. Appendix, Exh. F at

68, 73. Two studies released in August 2008 and reviewed by Santa Clara County's Health

Officer, Dr. Martin Fenstersheib, M.D., confirm that consumer confusion about the nutritional

content of chain restaurant foods is rampant. Fenstersheib Decl., ¶¶20,21. Another "recent

study found that calories in restaurant items were almost *two times* more than what consumers

expected." *See* Katz Decl. at ¶ 37 (attached as Exh.B to Fenstersheib Decl.). A March 2007 poll

conducted in California found that an overwhelming number of Californians are unable to identify

fast food and restaurant menu items with the fewest or most calories, salt, or fat. *Id.* at ¶37 n.62.

### 2.  Misleading Restaurant Menus and Deceptive Advertising Practices Create Consumer Confusion.

Defendants' supporting declarations and the materials provided by *amici* both in this case

and in the challenge to San Francisco's menu labeling ordinance demonstrate that the menu

boards and menus of chain restaurants are deceptive and misleading. *See* Fenstersheib Decl. at

¶21 (summarizing August 2008 findings that of children's menu offerings at 25 top chain

restaurants 93% exceeded recommended calories, 86% exceeded recommended sodium and 45%

exceeded recommended limits for saturated and trans fats and concluding that "Because

children's meals are advertised as 'meals,' many parents are likely to assume that portion sizes are

calculated to allow children to eat three meals a day.") & Exh. D &  Wootan Decl. at ¶¶ 10-16

("It is not uncommon for a restaurant to provide half of a day's recommend calories in a single

meal.  No one would mistake cheese fries with ranch dressing for a health food, but few would

guess that a typical serving uses up one and a half day's worth of calories (3,010 calories). . . . It

is common for restaurants to serve two to three times more than what is considered a standard

serving size. . . . Without nutrition information, consumers substantially underestimate the levels

of calories found many less healthful menu items."  Bassett Decl. at ¶ 6 ("New York City press

reports demonstrate a positive consumer response [to menu labeling there], with frequent reports

1   of 'sticker shock' at the calorie content of many items.").

2        Moreover, chain restaurants target adults and children with deceptive advertising

3   suggesting that fast food is wholesome, healthy food.  Dr. Katz's declaration provides an

4   example:  an advertisement for McDonald's stating McDonald's is a place where parents "don't

5   have to worry about the quality or nutrition." Katz Decl., ¶ 61.  Such advertising is deceptive

6   both because Happy Meals listed on the McDonald's website have 26% more calories than the

7   advertised meal, Katz Decl., ¶ 62, and because the vast majority of children's meals at

8   McDonald's – indeed at most of the top fast-food restaurants – exceed recommended calories for

9   a child's meal.  Fenstersheib Decl. Exh. B, ¶19.

10

11        **C.    Local Governments Are Entitled To Attack Problems Piecemeal And To Take
12              Action When the Need Is Self-Evident**

13        CRA cannot rehabilitate its First Amendment claim with arguments that the Ordinance

14   irrationally targets fast-food chain restaurants (rather than applying to all restaurants) or rests on

15   "conjecture" rather than proof of the tendency of restaurant menus to mislead consumers.  Pl.

16   Memo at 24.  Both arguments were rejected in *Zauderer*.  The Court was "unpersuaded by [the]

17   argument that a disclosure requirement is subject to attack if it is 'under-inclusive,' that is, if it

18   does not get at all facets of the problem it is designed to ameliorate.  As a general matter,

19   governments are entitled to attack problems piecemeal . . . ."  471 U.S. at 651, n. 14.

20

21        *Zauderer* also rejected the proposition that the government must provide evidence to

22   establish that consumers are likely to be misled.  *Id.* at 652-53.  The Court explained:

23        The assumption that substantial numbers of potential clients would be so
24        misled is hardly a speculative one . . . .  When the possibility of deception
          is self-evident . . . , we need not require the State to conduct a survey of
25        the public before it may determine that the advertisement has a tendency
          to mislead."
26

27   *Id.* (citations and internal marks omitted).  Thus, on rational basis review, the Court need not even

28   consider the substantial body of evidence supporting Santa Clara County's decision to focus on

Opposition to Motion                                                    C08-03685 CW

24

1    chain restaurants and demonstrating that the vast majority of consumers – and even nutritionists –

2    are deceived about the number of calories in fast-food meals.  Wootan Decl. ¶ 16.

3           **D.**     **CRA Would Be Unlikely To Succeed On the Merits Even Under *Central***

4                 ***Hudson***

5         Even if the Court were to apply intermediate scrutiny under *Central Hudson*, CRA is

6    unlikely to succeed on the merits.[12]  *Central Hudson* sets forth the standard of review for First

7    Amendment challenges to restrictions on commercial speech.  447 U.S. at 556; *see also* Post at

8    9-11.  It dictates the following inquiry:

9

10             At the outset, we must determine whether the expression is
               protected by the First Amendment.  For commercial speech to

11             come within that provision, it at least must concern lawful activity
               and not be misleading.  Next, we ask whether the asserted

12             governmental interest is substantial.  If both inquiries yield positive
               answers, we must determine whether the regulation directly

13             advances the governmental interest asserted, and whether it is not
               more extensive than is necessary to serve that interest.

14

15   *Id.*  The asserted "restriction" here is the requirement to include certain factual nutritional

16   information on menu boards and menus affected by Ordinance 300.793.  CRA's theory fails each

17   of the four prongs of the *Central Hudson* test.

18          **1.**     **Chain Restaurant Menu Boards and Menus Are Misleading And Not**

19                **Entitled to Protection Absent The Required Calorie Information**

20        *Central Hudson* recognizes that "[t]he First Amendment's concern for commercial speech

21   is based on the information function of advertising.  Consequently, there can be no constitutional

22   objection to the suppression of commercial messages that do not accurately inform the public

23   about lawful activity."  *Id.* at 563.  If a commercial communication is "misleading" or

24   "deceptive," it is not entitled to First Amendment protection.  *Id.*  Defendants' evidentiary

25   showing establishes that the size and contents of portions and "meals" at chain restaurants, when

26

---

27   [12] As discussed above, the Supreme Court's First Amendment cases recognize that government-mandated disclosures
     of accurate, factual, commercial information as not "restrictions" covered under *Central Hudson*. *See supra* at VA

28   (discussing *Zauderer*).  Nevertheless, Defendants provide this analysis in an abundance of caution to demonstrate that
     Ordinance 300.793 can withstand intermediate scrutiny.

Opposition to Motion                                                                                    C08-03685 CW

1    combined with the absence of nutritional information at the point of decision making, is

2    profoundly misleading for consumers. *See, supra*VB2.

3
                    2.    **Santa Clara County's Interests in Advancing Public Health,**
4                         **Combating Consumer Confusion and Deception, and Educating**
                          **the Public Are All Substantial**
5

6        Santa Clara adopted Ordinance 300.793 "to combat the serious public health crisis

7    resulting from obesity" and to enable consumers to make "informed decision that may decrease

8    their risk of the severe health effects associated with being overweight or obese. Fenstersheib

9    Decl. at ¶¶ 10, 26. Dr. Fenstersheib's declaration, the expert reports provided by Margo Wootan,

10   D.Sc., and Mary Bassett, M.D., M.P.H., and the information provided by *amici* amply

11
     demonstrate the importance of the public health crisis facing Santa Clara County
12

13       In addition, reducing consumer confusion and educating the public are substantial

14   government interests in their own right. *Central Hudson,* 447 U.S. at 557 ("The First

15   Amendment's concern for commercial speech is based on the information function of

16   advertising."); *see also* Post at 8 ("Compelled disclosures also frequently reduce information costs

17   and thereby increase market efficiency.") (citing Robert S. Pindyck & Daniel L. Rubinfeld,

18
     *Microeconomics. Why Markets Fail: Incomplete Information* 612 (Prentice Hall 1998)).
19

20                  3.    **Ordinance 300.793 Directly Advances the County's Interests**

21       To "directly advance" Santa Clara County's interests, Ordinance 300.793 need only

22   "provide more than 'ineffective or remote support'" for the goals of advancing public health,

23   reducing consumer confusion and educating the public. *Ass'n of Nat'l Advertisers, Inc. v.*

24   *Lungren,* 44 F.3d 726, 732 (9th Cir. 1994). On this record, the *Central Hudson* standard is easily

25   met. CRA is unlikely to succeed on the merits in light of the substantial evidence and expert

26   opinion regarding the link between providing consumers with information about the number of

27   calories and amounts of fat and sodium in chain restaurant foods and advancing public health.
28

Opposition to Motion                                                              C08-03685 CW

1        Eating chain restaurant food correlates directly with higher rates of obesity.  Wootan Decl.

2  ¶ 10, and Fenstersheib Decl. Exh. C.  Portion sizes and "meal" packages at chain restaurants

3  mislead consumers about the number of calories and amount of fat and sodium in menu items.

4  Wootan Decl. ¶ 10 and Fenstersheib Decl. Exh. C.  Menu labeling enables consumers who see

5  the information to make healthier choices, and consumers do make healthier choices when given

6  nutritional information.  Bassett Decl. ¶8, and Wootan Decl. ¶¶ 22-27.  Recent evidence from an

7  assessment of New York City's menu labeling ordinance also indicates that at least some

8  restaurants will reformulate their menu offerings.  Bassett Decl. ¶7.  Indeed, there is a consensus

9  in the field of public health that menu labeling is an effective – indeed a critical – component of

10  any effort to reduce obesity and its attendant health risks.  Katz Decl. ¶¶ 56-58.  It is hard to

11  imagine how CRA could prevail in arguing that providing nutritional information will give no

12  more than "ineffective or remote support" to Santa Clara County's public health goals.[13]

13        Applying *Central Hudson,* the Ninth Circuit has upheld restrictions on commercial speech

14  that were designed to advance "consumer knowledge and awareness . . . discourage exploitation

15  and deception . . . give all consumers information permitting them to make rational product

16  comparisons and tradeoffs . . . and increase[] the flow and purity of information in the

17  marketplace" *Ass'n of Nat'l Advertisers,* 44 F.3d at 732 (upholding restriction on the use of terms

18  signaling environmentally-friendly products) (citing *Virginia State Board of Pharmacy v. Virginia*

---

[13] Defendants object to the Declaration of David B. Allison, which was submitted in the *NYSRA v. NYC* matter, and which is attached in this case as Exhibit E to the Declaration of Debra Demuth. Dr. Allison's opinions are not generally accepted in the field of public health.  As reported in the New York Times, Dr. Allison resigned from his position as incoming president of the Obesity Society in response to "criticism from some of the group's members after he wrote an affidavit as a paid consultant on behalf of the restaurant industry." S. Saul, *Conflict on the Menu*, N.Y. Times, Feb. 16, 2008, Sec. C-1. As the New York Times reported it: "Because Dr. Allison's position ran counter to the conventional thinking in his field, some critics contended that it illustrated the way industry money can influence scientific and medical debate." *Id.* Accordingly, his testimony should either be excluded or be afforded little weight. *See* F.R.E. 702.

1    *Citizens Consumer Council*, 425 U.S. 748, 771-72 (1976) ("[t]he First Amendment ... does not

2    prohibit the State from insuring that the *734 stream of commercial information flow cleanly as

3    well as freely").  Ordinance 300.793, likewise, directly advances the goal of educating consumers,

4    discouraging deception and enabling consumers to make informed choices in the marketplace.

5
                    4.      **Ordinance 300.793's Requirements Are Not More Extensive Than
6                            Necessary to Serve the County's Substantial Interests**

7           Implementation of Ordinance 300.793 is necessary to reduce consumer confusion and

8    deception about the nutritional content of food sold at chain restaurants and to advance public

9    health.  Many chain restaurants provide no nutritional information to consumers and only a few

10   provide that information at the point of decision making.  Fenstersheib Decl., Exh. C &D.  The

11   data summarized in the declarations and amicus briefs supporting defendants confirm that other

12   ways of conveying nutritional information are ineffective.  Katz Decl. ¶¶  47-55, Bassett Decl. ¶

13   4., Wootan Decl.¶¶ 30-38  As the report this month from Berkeley, "Potential Impact of Menu

14   Labeling of Fast Foods in California" concludes, "[m]enu board labeling . . . has the potential to

15   dramatically *reverse* the trajectory of the obesity epidemic in California."  Fenstersheib Decl.,

16   Exh. C (emphasis added).  As Dr. Fenstersheib concludes, "[t]he increasing rate of overweight

17   and obesity, the harm to individuals, the community and the public from obesity-related illnesses

18   and the clear relationship between eating at fast-food restaurants and increased caloric intake all

19   support the necessity of Ordinance 300.793 to advance public health and to reduce consumer

20   confusion and deception when viewing chain restaurant menus and menu boards."  Fenstersheib

21   Decl., ¶ 26.

22          Ordinance 300.793 is narrowly tailored to advance substantial governmental interests.

23   Because the challenged law satisfies the *Central Hudson* test, CRA is unlikely to prevail on the

24   merits.

25   / / /

1

### VII.  CRA IS NOT LIKELY TO SUCCEED ON THE MERITS
### OF ITS CALIFORNIA FREE SPEECH CLAIM

2

3      CRA fares no better on its claim under the "free speech clause" of the California

4  Constitution than on its First Amendment claim.  CRA is correct that Article I, section 2's

5  protection "is at least as broad as the First Amendment's." *Gerawan Farming, Inc. v. Lyons*

6  ("*Gerawan I*"), 24 Cal. 4th 468, 490 (2000).  CRA fails to mention, however, the California

7  Supreme Court's clear instruction that decisions of the U.S. Supreme Court "are entitled to

8  respectful consideration and ought to be followed unless persuasive reasons are presented for

9  taking a different course." *People v. Teresinski*, 30 Cal. 3d 822, 836 (1982).  No such reasons are

10  present here.

11

12      CRA ignores the relevant authority – federal and California cases upholding laws that

13  require *disclosure of factual and uncontroversial information* – and instead urges the Court to

14  apply cases striking down laws that require commercial entities to fund *advertising messages* with

15  which they disagree.  Neither *United Foods* under the First Amendment nor *Gerawan I* under the

16  California Constitution states the applicable test in this case.  *See, supra,* n.10.

17

18      The proper test was recently applied by the San Francisco Superior Court in a case that

19  considered a California free speech challenge to Proposition 65's requirement that businesses

20  display a "safe harbor warning" advising the public of the presence of toxic substances in the

21  location.  *Environmental Law Foundation v. Laidlaw Transit Services*, 2008 WL 2157672 (Cal.

22  Super. Jan. 8, 2008).  The court looked to federal law and refused to apply heightened scrutiny:

23
> [T]he warning here falls under case law for labels and warnings, and
24  easily meets the corresponding rational basis standard of scrutiny.
> "Regulations that compel 'purely factual and uncontroversial' commercial
25  speech are subject to more lenient review than regulations that restrict
> accurate commercial speech and will be sustained if they are 'reasonably
26  related to the State's interest in preventing deception of consumers.'"

27  *Id.* at *2 (quoting *Sorrell*, 272 F.3d at 113).

28

Opposition to Motion                                                                    C08-03685 CW

1    The free speech interest in protecting the flow of commercial information that underlies

2    the rule in *Zauderer*, and all available California authority, support application of *Zauderer* and

3    its progeny here.  Accordingly, CRA is unlikely to prevail on the merits.

4                              **VIII. CONCLUSION**

5    CRA is unlikely to succeed on the merits and has not made an adequate showing of

6

7    irreparable harm.  The motion for a preliminary injunction should be denied.

8    Dated:  August 19, 2008                    Respectfully submitted,

9                                               ANN MILLER RAVEL
                                                County Counsel
10

11                                       By:  _____/s/_____.
                                              MIGUEL MÁRQUEZ
12                                            Assistant County Counsel

13                                            Attorneys for Defendant
                                              COUNTY OF SANTA CLARA
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28